VIOLA NEVIL, RESPONDENT, v. VASHTI WAHL (DEFENDANT), THE HOME INSURANCE COMPANY OF NEW YORK AND THE HOME INDEMNITY COMPANY OF NEW YORK, GARNISHEES, APPELLANTS.— 65 S. W. (2d) 123.

Springfield Court of Appeals.    August 19, 1933.

Motion for Rehearing overruled, November 29, 1933.

50

*Ward & Reeves* for appellants.

*Sharon J. Pate* and *Sam J. Corbett* for respondent.

BAILEY, J.—This is an appeal from a judgment in the sum of $5,000 against the garnishees in a garnishment proceeding based upon an execution issued on a default judgment for damages against defendant Vashti Wahl. This judgment was obtained on the 7th day of December, 1931. One the first day of February, 1932, plaintiff caused a general execution to be issued against defendant which was returned unsatisfied. At the same time The Home Insurance Company and The Home Indemnity Company were each served with a summons as garnishee to answer interrogatories, returnable March, 22, 1932. After unsuccessful motions to remove the cause to the Federal Court on the part of said garnishees, plaintiff filed interrogatories for each of said garnishees as to whether said garnishees had any property belonging to defendant or if they were indebted to defendant in any sum or bound to pay defendant money not yet due. Each garnishee filed a separate answer making a negative reply.

to each interrogatory. Thereafter plaintiff filed separate denials of the garnishees' answers, in each of which it was pleaded among other things that: "at the time said garnishee was served with the summons of garnishment in this cause, the said garnishee was justly indebted to the defendant, Vashti Wahl (Mrs. J. S. Wahl), by reason of the fact that theretofore the garnishee under an insurance policy issued by its jointly with The Home Indemnity Company, New York, a stock company, another insurance company, under Policy No. CA1114617, Renewal No. 9060283 Home-Maryland, had insured the defendant, Vashti Wahl (Mrs. J. S. Wahl) against liability for damages for bodily injury or death of one person in the sum of $10,000 for any loss by reason of the liability imposed by law upon the defendant for such bodily injuries or death resulting therefrom, which should be incurred by the defendant, for damages accidently suffered or alleged to have been suffered during the policy period, by any person or persons, by reason of the ownership, maintenance and use by the defendant of her certain automobile described in said policy, —while being used by her for the purpose of business and pleasure only during the policy period under said policy, that is to say, from the 5th day of March, 1931, noon, to March 5, 1932, noon, standard time,—that thereafter this plaintiff procured a judgment against said defendant, Vashti Wahl (Mrs. J. S. Wahl), on the 7th day of December, 1931, for personal injuries sustained by this plaintiff, Viola Nevil, while riding as a guest in said automobile described in said policy, plaintiff being the guest of the insured, said insurer being over the age of twenty-one years, and at the time of plaintiff's injuries, to-wit: on the 13th day of September, 1931, was driving and operating said automobile herself, and on account of the negligence of defendant in operating said automobile plaintiff was injured and secured said judgment against said defendant on said 7th day of December, 1931; and that the defendant, Vashti Wahl, upon said suit being filed against her by this plaintiff, for said personal injuries upon which plaintiff afterwards obtained judgment for the sum of $5,000 against defendant, gave notice thereof with full particulars to said garnishee insurance company, and also upon the occurrence of the accident defendant gave prompt written notice thereof to the company's home office at New York, New York, and also to its local authorized agent; and that after the institution of said suit for damages by the plaintiff against the defendant, the garnishee sent one of its authorized agents to Caruthersville, Missouri, the place of residence of plaintiff and defendant, and where said policy was issued, to investigate said claim and suit of this plaintiff, and said authorized agent of said garnishee did investigate the same, and was informed by plaintiff's counsels of the time and place of the trial to be had in said suit, but that the garnishee did not defend said suit for the defendant as agreed in said policy, though having

full knowledge and notice thereof after having investigated the same as aforesaid, and that plaintiff procured judgment as aforesaid against the defendant for the sum of $5,000 as aforesaid, in which sum, together with the costs of said action, under and by virtue of the terms and conditions of said policy of insurance, the garnishee became and was indebted to this defendant.''

The Home Insurance Company filed a reply setting up that it became liable under the policy only for such damages as set out in Part 1 of the schedule (fire, lightning and transportation) and was therefore not liable under the policy for the damages sued for by plaintiff in this case.

The Home Indemnity Company also filed a separate reply in which it admitted the execution of the policy and that plaintiff obtained a judgment by default against defendant on the 7th day of December, 1931; denied that its agent at Caruthersville had any knowledge of the then pending suit for damages; admitted that after the judgment defendant notified said garnishee that judgment had been obtained but denied that defendant performed the conditions required of her by the policy to be performed in that defendant failed to send garnishee the summons and petition served upon her after plaintiff filed suit and the garnishee had no notice of said suit until after default judgment was had; that after such default judgment was obtained defendant, on account of the relationship alleged to exist between the parties, refused to aid and co-operate with said garnishee, as required by the terms of the policy, in its effort to have said judgment set aside, and refused to permit garnishee's attorneys to file a motion in her name for that purpose; that the injuries to plaintiff were not caused by the negligence of defendant and garnishee advised defendant that plaintiff had no cause of action against her, but defendant, knowing the facts, failed to co-operate with garnishee to aid in the defense of said action, but aided plaintiff, contrary to the provisions of the policy, by reason of which garnishee was not liable.

The trial was before the court without a jury. The policy, which plaintiff introduced in evidence, is in two parts and is called a combination policy, signed by the Home Insurance Company, a stock company, and by the Home Indemnity Company, also a stock company. In Part I provision is made for protection of the insured against loss by fire, theft, robbery, tornado, explosion etc., but makes no mention of indemnity insurance. On its face Part I purports to define and limit the undertakings and liability of the Home Insurance Company. Separate premiums are set out for the different items above mentioned.

Part II of the policy defines the undertakings and liability of the Home Indemnity Company. It provides for indemnity to defendant for injury to others. The limit of liability for the death

or injury of one person is $10,000. Part II also provides that the Home Indemnity Company shall give to the insured prompt and efficient service in investigating cases of bodily injuries to others; in conducting negotiations for settlement of any claims on account of such injuries; and in defending any suit brought to recover damages on account of such cases of bodily injury unless the company may elect to effect settlement of such suit. The Home Indemnity Company further agreed to pay, in addition to damages, all expenses of investigation, negotiation or defense and all costs taxed against the assured in any such suit defended by the company. The policy contains further provisions that: "Notices to Company—D. Upon the occurrence of an accident, the assured shall give prompt written notice thereof to the company's home office at New York, New York, or to an authorized agent. If any claim is made on account of such accident, the assured shall give like notice thereof with full particulars. If thereafter, any suit or other proceeding is instituted against the assured to enforce such claim, the assured shall immediately forward to the company at its home office every summons or other process served upon him. Notice given by or on behalf of the assured to any authorized agent of the company within the state in which this policy is issued, with particulars sufficient to identify the assured, shall be deemed to be notice to the company, it being understood that failure to give any notice required to be given by this policy, within the time specified therein, shall not invalidate any claim made by the assured if it shall be shown not to have been reasonably possible to give such notice within the prescribed time, and that notice was given as soon as was reasonably possible.

"Cooperation of Assured—E. The assured shall not voluntarily assume any liability, nor incur any expense, other than for immediate surgical relief, nor settle any claim, except at the assured's own cost. The assured shall not interfere in any negotiation for settlement, nor in any legal proceeding, but whenever requested by the company and at the company's expense, the assured shall aid in securing information and evidence and the attendance of witnesses, and shall co-operate with the company (except in a pecuniary way) in all matters which the company deems necessary in the defense of any suit or in the prosecution of any appeal."

The policy further provided in paragraph K that no change in the agreements, general conditions etc., either printed or written should be valid unless made by the endorsement of the president or secretary of the company, "nor shall notice to, or knowledge possessed by any agent or any other person be held to waive, alter or extend any of such agreements, general conditions, statements or warranties."

Under the admissions in the pleadings there is no question as to the issuance of the policy, that an accident occurred, that plaintiff

was injured or that under the terms of the policy the Home Indemnity Company was bound to defend any suit brought against defendant, provided it fell within the terms of the policy and the insured had complied with the terms thereof. The contention of the garnishee is that defendant failed to comply with the policy terms in that she did not send a copy of the summons and petition to garnishee and did not co-operate with garnishee as provided in Sections D and E of the policy, above set forth. Plaintiff makes no contention that defendant sent a copy of the summons or petition to the home office of garnishee, but as we understand, relies upon a waiver and actual notice to duly authorized agents of garnishee in regard to the suit. The burden of proving waiver rested upon plaintiff.

In support of the contention that the Home Indemnity Company, garnishee, waived the provisions of the policy in the above particulars, plaintiff introduced in evidence, first a letter of October 6, 1931, in which the Home Indemnity Company acknowledged receipt of notice of the accident, and promised to give the matter their immediate attention. Plaintiff further introduced a copy of a letter dated October 26, 1931, addressed to the Home Indemnity Company and signed by defendant Mrs. J. S. Wahl, which letter is as follows:

"The Home Indemnity Co.,

"St. Louis, Mo.

"No. A-59-119.

"Gentlemen:

"Suit has been brought against me for accident of September 13, last. I have notified Bernard Insurance Agency, this city. However, I have not heard anything further, and court convenes on Nov. 16, hence I am writing to advise you in order you might give it necessary attention, thereby obliging.

"Yours truly,

"(Signed)   Mrs. J. S. Wahl."

Also a letter of December 8th, 1931, as follows:

"Home Ind. Co. of New York,

"St. Louis, Mo.

"In re: CA-1114617.

"Gentlemen:

"I take this means of notifying you that Mrs. Viola Nevil obtained judgment against me yesterday in the circuit court of this, Pemiscot County, Missouri, in the sum of Five Thousand Dollars ($5000.00), together with costs of said action, for accident of September 13, 1931.

"You will recall I notified you of this suit on two occasions.

"In order to comply with your insurance contract and also to save any future embarrassment to me, I would be pleased if you

would settle this matter with Mrs. Nevil and her attorneys at once, as I am advised they are about to have an execution issued against me.

"Yours very truly,

"MRS. J. S. WAHL."

Plaintiff further introduced in evidence a letter from the garnishees, dated December 30, 1931, in which they disclaimed any liability under the policy for the alleged reasons that defendant had failed to forward them a copy of the summons and petition in the case; for failure to notify them where said suit was pending and for refusal to permit their attorney to file a motion to set aside the default judgment. Plaintiff further introduced in evidence, over the objection of defendant, a letter known as plaintiff's Exhibit "E", addressed to the garnishees but mailed to their lawyers at Caruthersville, prepared by plaintiff's attorneys (according to Mr. Wahl, husband of defendant) and signed by defendant. This letter is of considerable length, and we shall not attempt to set it out in full. It recites the contents of defendant's letter of December 30th (supra) and using that as a basis, proceeds to elaborate upon the fact that defendant notified garnishees of the accident and of the fact that suit had been instituted and that judgment had been rendered against her. It contains an offer to permit garnishee to use defendant's name in a motion to set aside the judgment, gives an opinion of her lawyers that garnishees had waived the conditions of the policy, but states defendant is willing to co-operate in every truthful and legal step to have the default judgment set aside. Objection was made to the introduction of this letter for the stated reason that it "is self-serving and argumentative; and for the further reason that the largest portion of that shows on its face to be hearsay." One of the errors assigned on this appeal is the failure of the trial court to sustain this objection. We shall first dispose of that assignment.

We think the letter should not have been admitted. While most of the statements contained therein were already in evidence, the letter, after stating the contents of defendant's letter as a premise, proceeded to give plaintiff's theory of the case in its most favorable light, in an argumentative form, and finally ended with an offer to co-operate, made after garnishees had definitely disclaimed any liability under the policy for failure to co-operate. The letter being argumentative and self-serving was inadmissible. [A. B. Smith Lumber Co. v. Ins. Co., 6 S. W. (2d) 920, l. c. 929.]

But it must be remembered that this was a trial before the court and the same strictness as to the admission or exclusion of evidence is not to be applied as in cases tried before a jury. [Powers & Boyd Cornice Co. v. Muir, 123 S. W. 490, 146 Mo. App. 36; Laumeier v. Gehner, 19 S. W. 82, 110 Mo. 122.]

As heretofore stated, practically all the statements contained in

the letter, except the offer to co-operate, were in evidence in a different form, and it is to be presumed that the mind of the learned trial judge would not be swayed by the argumentative and self-serving character of the letter. We therefore do not believe the case should be reversed on that ground.

Further evidence in support of plaintiff's theory of waiver was substantially as follows: The accident occurred on September 13, 1931. Notice of the accident was given on September 15, 1931. Suit was filed and defendant was served with summons on the 13th day of October, 1931, but, as heretofore stated, defendant failed to send garnishees a copy of the petition or summons. Instead of doing so she wrote, or had written, the letters hereinbefore referred to. The case was set for trial on December 3, 1931, but garnishee had no notice thereof. On December 4th, Walter Bernard, local agent for garnishees advised garnishees by letter in regard to the fact that defendant had been served with summons in this suit and that the case had been set for trial the day before but was passed over and could be taken up at any time during the term of court. According to the letter the first knowledge Bernard had of the suit was at that time. Garnishee denied having received this letter, although it was shown to have been properly addressed, stamped and posted.

On October 31, 1931, Carroll McShane, an investigator for the Home Indemnity Company, garnishee, arrived in Caruthersville to investigate the case, after the letter of October 26, 1931, heretofore set out, had been received in the office of the Home Indemnity Company in St. Louis. The duties of McShane were, after an accident was reported, to ascertain the facts, interview witnesses, identify the car, and, if there were lawyers in the case, to talk to them about any arrangements looking toward a settlement of the case. He had, as he testified, no authority to settle claims and had nothing to do with cases in court. Plaintiff's witness, Sharon J. Pate, who was also her attorney and nephew, testified that when McShane was in Caruthersville on the 31st of October he came to Mr. Pate's office; that he asked where Mrs. Nevil, the plaintiff lived, and that he (Pate) offered to take McShane to her house; that McShane said, " 'No, I have already talked with the doctor, and you will have to try the case;' " that the witness then told him that would suit him fine and that he had, "better hurry and get his answer in because court set on November 16th;" that McShane said, " 'We will look after that.' " Before this testimony went in garnishees objected to same because, they said, there was no proof that McShane had any authority to bind the insurance companies or to waive any provisions in the policy and because the policy provided that any information given an agent should not waive the provisions of the policy. This objection was overruled. Error is assigned in the admission of this testimony. The point is made that McShane had no authority to

make such statements and bind the company contrary to the provisions of the policy; that his authority was limited to settling cases and making investigations as to witnesses, etc. According to the witness J. J. McNulty, attorney for the garnishee Home Indemnity Company with offices in St. Louis, the letter of October 26, 1931, hereinbefore set out, notifying garnishee that suit had been brought against the insured and that court convened on November 16th, was received by him and after he received the letter he sent McShane "down there" to investigate the case. McShane testified he left St. Louis the morning of the 26th and that he was in Caruthersville the 27th. He said he had no notice of the letter of the 26th. He further denied that Mr. Pate, plaintiff's attorney, informed him that suit had been filed and emphatically denied that he agreed to file answer in the case.

Whether or not McShane, in the capacity of investigator, had authority to waive Clause D requiring the insured to immediately forward to the insurer copies of all summons or petition served on her, we deem immaterial. Granting that he did have such authority, was there any substantial evidence of waiver? There can be no doubt that such stipulation in a liability policy is binding and, from the standpoint of the insurer, of vital importance. Such provision can, of course, be waived by any agent of the insurer having apparent authority to do so, either by parole or matters *in pais*. [Nickell v. Phoenix Ins. Co., 144 Mo. 420, 46 S. W. 435.]

In regard to such provisions in a policy it has been held, following the general rule as to estoppel, that, "When an insurance company, with full knowledge of all the facts, enters into negotiations and relations with the assured, recognizing the continued validity of the policy, the right to a forfeiture for any previous default which may be asserted is waived." [Frank & Co. v. New Amsterdam Casualty Co., 165 Pac. (Cal.) 927, l. c. 929.]

Our Supreme Court in Schwab v. American Yeoman, 305 Mo. 148, l. c. 155, 264 S. W. 690, has held that "A waiver is an intentional relinquishment of a known right. To make out a case of implied waiver of a legal right, there must be a clear, unequivocal and decisive act of the party showing such purpose, or acts amounting to an estoppel on his part. [First National Bank v. Maxwell, 123 Cal. 360, 55 Pac. 980.] . . . It has been said that the law of waiver is a, 'technical doctrine introduced and applied by courts for the purpose of defeating forfeitures.' It has also been said that in insurance cases the courts are inclined to grasp any circumstances which indicate an election to waive a forfeiture, although insufficient to create a technical estoppel. But even in insurance cases the *intention to waive* must plainly appear, or else the acts or conduct relied upon as constitut-

ing waiver must involve some element of estoppel. [Parsons v. Lane, 97 Minn. 98, 106 N. W. 485, 7 Ann. Cas. 1144.]''

We think there was no element of estoppel shown by this evidence. We understand there could be no estoppel unless the acts or words relied upon as creating an estoppel were made to or known to the person who has a right to claim a waiver or estoppel. The conversation in question was not in the presence of the insured defendant, nor was it in the presence of any person or attorney representing her. On the contrary the conversation was had with plaintiff's attorney, presumably occupying a position antagonistic to defendant as well as to the garnishee. There is no proof that this conversation was communicated to the insured or that she had any knowledge thereof. Statements of this character, made by an agent or investigator of an insurance company to a third person would not, in our opinion, be sufficient to constitute a waiver of the essential provisions of a liability policy unless communicated to the insured, although the fact that an investigation was made might be considered along with other circumstances in the case as evidence that the insurer had in fact waived the requirements of the policy. [13 C. J. 30, Art. 690.]

But there was no other evidence of waiver. This particular evidence, standing alone, was insufficient to establish a waiver. At most it was only evidence that the insurer had notice of plaintiff's claim and that a suit had been filed. This information they already had in the form of a letter. But neither the letter nor any other evidence in the case indicates that the insured made any attempt whatever to comply with paragraph D of the policy. The insurer was never informed as to where the suit was pending nor is there any evidence that they ever saw a copy of the petition. Notice alone that the suit was pending was insufficient. Under the terms of the policy the garnishee herein was entitled to have a copy of the summons and petition as served on defendant immediately forwarded to them, in order that the garnishees might appear in the case, file answer, and make such defense as they deemed proper in the name of the insured. It was the essence of the insurance contract and for failure to comply therewith the garnishees had a right to deny liability under the policy. [Metropolitan Casualty Co. v. Colhurts, 36 Fed. (2d) 559; New Jersey Fidelity & Plate Glass Co. v. Love, 43 Fed. (2d) 82.]

Garnishee further insists that the trial court erred in refusing its demurrer because the insured failed to co-operate as required by Clause E. of the policy. Such provision in a liability policy has been held to be binding and valid in this State. [Finkle v. Automobile Ins. Co., 26 S. W. (2d) 843, 224 Mo. App. 285.]

Although there was not any evidence in this case tending to prove a compliance with the clause in the policy requiring the insured defendant to forward to the insurer copy of summons and petition in

the suit brought by plaintiff against the insured, and no substantial evidence of waiver, garnishee did not for that reason immediately deny liability. After the default judgment was rendered the garnishee employed attorneys for the purpose of having the default judgment set aside in order to represent the insured and try the case upon its merits. During the term of court at which the judgment was rendered these attorneys prepared and presented to the insured defendant a motion to have the judgment set aside, which they had a right to file under the law. The insured refused to sign this motion. In regard to this occurrence defendant did not testify because she was not present at the trial. Her husband, J. S. Wahl, testified on direct examination that he was present when the motion to set aside the judgment was presented to the insured and that she then said she had no objection to setting the judgment aside, "if they would state the facts and the truth." On cross-examination, by Mr. Ward, garnishee's attorney, he testified as follows: "I don't know the date that you and Mr. McNulty were down at my house; if the letter says December 11, 1931, I judge that is right. You had phoned my wife and phoned me, I believe, that you wanted to come to see my wife and I came home from the office. You, Mr. McNulty, my wife and I were present at that meeting. When you were there we were talking about the default judgment being rendered against my wife for $5000, and you asked my wife in my presence if I had sent a copy of the petition and summons to them, and I expect I answered that I hadn't sent it, that I didn't know it was necessary; and then you told us that you wanted to file a motion to set aside the judgment by default, but that my wife was a party defendant and that the insurance company was not a party to the suit and couldn't file a motion without my wife's consent.

"Q. Now, then, Mr. Wahl, haven't you got that conversation mixed up with what was said later about filing a motion for re-hearing, and at that time your wife said that she bought and paid for the insurance and wanted to protect her, that she was hurt and that she wasn't going to sign anything and didn't want the judgment set aside? A. I don't remember all that was said; she said that she wouldn't sign it unless it stated the facts. I think she said she wouldn't sign it, that she was not going to permit anybody to file a motion in her name, that she thought the old woman was hurt mighty bad and that $5000 wasn't too much, and that she thought the company ought to pay it; but I don't remember all that was said. She refused to sign the motion that you prepared, I know that."

On re-direct examination he testified:

"I can't remember all that was said between my wife and Mr. Ward and Mr. McNulty there in that conversation when they endeavored to get her to sign a motion to set aside the default judgment; I can remember some parts of it. In that conversation she had

with them she told them she wouldn't sign the motion because it had a whole lot of stuff in there that wasn't so, and that she wouldn't sign it.''

On re-cross examination the following question and answer was asked and given:

''Q. Mr. Wahl, don't you know that she refused to sign the motion down at her house, and that the motion never was read, and that after this letter, Exhibit E, was sent them that the motion was sent back to her? A. Might have been, I don't know. I can't say whether she read it or not, I don't remember whether it was read or not.''

Mr. J. J. McNulty, although an attorney for garnishee in its St. Louis office, was witness for plaintiff on the question of McShane's agency. On cross-examination he testified in regard to the effort to have the default judgment set aside as follows:

''That afternoon we went to see Mrs. Wahl; we told her we had a petition to set aside the default judgment and explained the situation to her, that we had no notice of the suit and were willing to come in and defend the suit and give her protection, and that we wanted to file a motion to set aside the default judgment, that we were not a party to the suit and couldn't do it, and she refused to allow us to do it, stating that she carried insurance with us and that Mrs. Nevil was seriously injured and that she wanted the judgment to stand, wouldn't have it set aside. She never at any time made a statement there that she would permit us to file a motion to set aside the default judgment; she wouldn't consent to it. The motion wasn't read, because she flatly refused under any circumstances to consent to it being filed. We had with us at that time a motion we had prepared.''

It is urged that the insured had a right to refuse to sign the motion to have the default judgment set aside for the reason, they say, the motion was full of ''lies.'' There is no proof of this. The motion is not in the record and we have no way of determining that question. Of course defendant would not be required to perjure herself. But the evidence of plaintiff's witnesses seem to indicate that the insured neither read the motion nor had it read in her presence, but simply refused to sign the same for the reason she wanted the insurance company to pay plaintiff, her husband's sister-in-law, because plaintiff was badly injured. The offer to co-operate after garnishee had denied liability for failure to co-operate came too late. Plaintiff's evidence substantiates garnishee's contention that defendant failed to co-operate as required by Sec. ''E'' of the policy. It has been held in most cases to be a question of fact and the trial court, sitting as a jury, has the right to decide that question and its finding, if supported by any substantial evidence would not be disturbed on appeal. [Finkle v. Western Automobile Ins. Co., supra.]

But the only co-operation the insured did in this case was to notify garnishee of the accident. In every other respect she failed to abide by the terms of the policy. We think garnishee's contention is correct.

The garnishee assigns error in the failure to sustain the demurrer to the evidence as to The Home Insurance Company because it was not liable under the provisions of Part I of the policy heretofore referred to. We think this assignment is correct and so rule.

The garnishee further contends that the demurrer to the evidence as to the Home Indemnity Company should have been sustained. In view of what has been said we think this contention should likewise be upheld for the reason it stands admitted that Clause D. of the policy was not complied with and there is no substantial proof of waiver. Also because plaintiff's own evidence shows insured failed to co-operate as provided by the terms of the policy. It is therefore unnecessary to consider other alleged errors. The judgment should be reversed. It is so ordered. *Allen, P. J.*, and *Smith, J.*, concur.