648 P.2d 131

Francisco Mendoza SALVATIERRA; Servando Gonzales Garcia; Tim Rollins; Walter J. Warren; Amedo R. Pino; Salvador Carrascotoriz; Fernando Esquer; Francisco Azcona Astiazaran; Otto Binder; Kenneth F. Wagner and Barbara Wagner, husband and wife; George T. Gregory, Jr., and Nina M. Gregory, husband and wife; James L. Stonebreaker and Janice Stonebreaker, husband and wife; and Granger L. Vinall, Plaintiffs/Appellees,

v.

NATIONAL INDEMNITY COMPANY, for itself and acting for The Esquire for Men, Inc., a corporation, Esquire Labs of Arizona, Inc., a corporation, Sol Behar and Elaine Behar, husband and wife, and Sol Behar and Elaine Behar dba "The Esquire for Men", Defendants/Appellants,

and

National Indemnity Company, for itself and acting for Daniel Singer and Paula Singer, husband and wife, Defendants/Appellants.

No. 2 CA–CIV 4211.

Court of Appeals of Arizona, Division 2.

April 20, 1982.

Rehearing Denied June 15, 1982.

Review Denied July 7, 1982.

Donald Estes, Tucson, for plaintiffs/appellees Salvatierra, Garcia, Rollins, Warren, Pino and Carrasco-Toriz.

Haralson, Kinerk & Morey, P. C. by Dale Haralson, Tucson, for plaintiffs/appellees Wagner, Gregory and Stonebreaker.

Richard D. Burris, Tucson, for plaintiffs/appellees Esquer, Astiazaran, Binder and Vinall.

Renaud, Cook & Videan, P. A. by J. Gordon Cook, Phoenix, for defendant/appellant Nat. Indem. Co.

D'Antonio & D'Antonio, P. C. by Gregory D. D'Antonio, Tucson, for defendants/appellants The Esquire For Men, Inc., Esquire Labs of Arizona, Inc., Behar and Singer.

Fish, Briney, Duffield, Miller, Young & Adamson, P. C. by Arthur H. Miller, Tucson, for defendant/appellant Nat. Indem. Co. for itself and acting for The Esquire For Men, Inc., Esquire Labs of Arizona, Inc., Behar, and Behar dba The Esquire For Men, Inc.

## OPINION

HOWARD, Chief Judge.

The determinative issue here is whether the trial court erred in not allowing National Indemnity Company to intervene in the lawsuit filed by appellees against its insured.

Sol Behar and Daniel Singer operated a barbershop, The Esquire for Men, Inc. They were also the sole stockholders of a separate corporation, Esquire Labs of Arizona, Inc., that was in the business of performing artificial hair transplants. The two businesses were at separate locations. All the hair implants were done at the lab by lab employees supervised by licensed physicians. The barbershop carried "Beauty Shop and Barbershop Malpractice Liability Insurance" issued by National Indemnity Company (National). The lab was insured by another carrier.

The complaints filed below were not identical since plaintiffs were represented by different counsel. Examination of these complaints show that they only alleged wrongful conduct in connection with the hair implant process. However, we set forth part of Count VII, the negligence count, contained in some of the complaints since appellees contend that Count VII put the barbershop operation in issue:

"II. That Defendant undertook implantation of artificial hair into Plaintiffs' scalps; that Defendants failed to properly implant said hair; further, that Defendants were negligent by the very undertaking of the implantation and knew or should have known that the implantation would be unsuccessful; that Defendants acted with reckless disregard for the health of Plaintiffs.

III. That as a result of Defendants' ordinary negligence and gross negligence, Plaintiffs were caused serious and permanent injury and sustained and will sustain substantial financial losses due to medical and other expenses."

The barbershop's attorney requested that National defend the actions on behalf of its insured. At this time he was defending not only the barbershop, but the lab and the Behars and Singers. National responded by letter of July 11, 1980, which explained, among other things, why it declined to defend said suits on behalf of the barbershop as follows:

\*    \*    \*    \*    \*    \*

". . . However, we have thoroughly reviewed our policy and, based upon information that the occurrences did not take place on our insured premise (1066–68, North Campbell) and furthermore, it did not involve any acts performed by our named insured, we are quite confident that there is no coverage applicable under the terms of our policy No. GLA 13 33 99.

\* \* \* \* \* \*

Furthermore, we do not believe that the implantation of synthetic hair is any collateral 'Barber Shop' operation under the terms of our policy. In fact, it is my understanding that there is an entirely separate corporate entity involving the same corporate officers as identified under our policy (Behar and Singer) but that they have their own separate liability policy for that particular operation. The aforementioned reasons are primarily our basis for denying coverage for this loss and resulting lawsuits.

\* \* \* \* \* \*

. . . [I]f our investigation reveals any exposure to our policy then, of course, we will, and only under those circumstances, undertake the defense of Esquire For Men, Inc.."

On August 8, 1980, National filed a declaratory judgment action seeking to have the court determine whether it had an obligation to defend the actions. Simultaneously with the filing of the complaint in the declaratory judgment action, National filed a request for admissions of the barbershop corporation.

In its response to these requests for admissions, the barbershop admitted that the implantations did not take place at the barbershop premises and were not performed by barbershop employees, but instead, the implantations took place at the lab corporation premises and were performed by lab corporation employees under the supervision of a licensed physician.

National hired an investigator, Roger Winn. He talked to one of the plaintiffs' attorneys, Don Estes, and to an attorney for one of the physician defendants. He also audited the various pending suit files and verified that the implantation was done at the lab by lab employees. He found no hint of barbershop involvement.

National also took the depositions of Behar and Singer in the declaratory judgment action. National contends this discovery disclosed no barbershop involvement. Appellees claim the information discovered at these depositions should have alerted National as to possible barbershop involvement. These depositions are not part of the record on appeal and we therefore cannot consider them.

In the meantime, the defendants, The Esquire For Men, Esquire Labs, Behar and Singer entered into "Damron agreements" with various plaintiffs. See *Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969). The effect of the agreements was to give the plaintiffs a free hand to obtain judgments against them and seek satisfaction of such judgments from National and any other insurers which had issued policies to Esquire For Men, Inc. or Esquire Labs. It would appear that under the terms of the agreements, the only way which these defendants would ever incur any liability would be if the plaintiffs failed to make any recovery against any insurance company which had issued liability insurance to them or any recovery against the medical doctors named as defendants or the insurance companies that had issued malpractice coverage to these doctors. If plaintiffs were unable to recover any sums whatsoever, the agreements provided that Esquire Labs and its principals would have to repay the plaintiffs the price paid by plaintiffs for the surgical implants. National did not know that its insureds had entered into this agreement.

On November 25, a trial took place. National was never notified that this was going to happen. The only persons who testified were the plaintiffs. The judgments totaled $650,000. Each judgment contained the following paragraph:

"That Esquire For Men, Inc., was negligent in the hair care, shampooing and professional barbershop services it provid-

ed to the Plaintiff . . . while the Plaintiff was upon the premises of Esquire For Men, Inc., at 1066–68 North Campbell in Tucson, Arizona, and elsewhere; and further, that the services and treatment provided to the Plaintiff were in connection with or incidental to the business carried on at Esquire For Men, Inc."

National did not learn about the judgments until on or before February 17, 1981, when it received an opposition to its motion for summary judgment in the declaratory judgment action. On the same day it hired attorney Arthur Miller to defend the barbershop on the barbershop risk. Miller filed an appeal in this court which was dismissed on April 9, 1981, upon motion of the barbershop who objected to attorney Miller representing it.

On April 15 attorney Miller filed a motion for relief under Rule 60(c), Arizona Rules of Civil Procedure, 16 A.R.S. National directly filed a motion to intervene on May 1.

Prior to moving to intervene, National conducted further discovery in the declaratory judgment action. This discovery disclosed that neither the insured, nor the attorneys involved in the hair implant case ever communicated to National in a way that would put it on notice that there was a claim against the barbershop based upon the barbershop risk which it insured.

The trial court ruled that National had violated its duty to defend and was not entitled to intervene. It also denied attorney Miller's Rule 60 relief.

Appellant, National, contends the trial court abused its discretion in denying intervention because the record shows that it had no notice of the fact that the plaintiffs were claiming negligence in the performance of post-surgery barbering services. Appellees' entire defense to the intervention ultimately rests upon two propositions: (1) The complaints put National on notice of the barbering claims and (2) National's duty to defend rests not upon the allegations of the complaints, but upon facts proved at trial. We find these propositions to be erroneous.

The general rule in Arizona on the duty of the insurance company to defend is as follows: If on its face the complaint in the action brought against the insured alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action, but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation. *Kepner v. Western Fire Insurance Company*, 109 Ariz. 329, 509 P.2d 222 (1973); *Granite State Insurance Corporation v. Mountain States Telephone and Telegraph Company*, 117 Ariz. 432, 573 P.2d 506 (App.1977). If the alleged facts ostensibly bring the case within the policy coverage, but other facts which are not reflected in the complaint plainly take the case outside the policy coverage, there is no duty to defend. *Kepner v. Western Fire Insurance Company*, supra.

The law is clear that an insurer must be given notice of an amended pleading which would impose a duty to defend, and a failure to give notice will relieve the insurer of liability under the policy. *Sussman v. American Surety Company of New York*, 345 F.2d 679 (5th Cir. 1965); *Seaboard Industries, Inc. v. Monaco*, 258 Pa.Super.Ct. 170, 392 A.2d 738 (1978). The insured cannot defeat the necessity of the notice of such an amended pleading by simply waiving the necessity of an amendment. Looking at Count VII which we have previously set forth, it is clear that there was not, contrary to appellees' contention, notice given to National of the barbering claims. Paragraph 2 of the count alleges negligence in the implanting of the hair and paragraph 3 is an allegation of proximate cause and not an allegation of general negligence.

In summary, National showed the following in its motion to intervene. The complaints did not allege any facts which showed policy coverage. National did not know of any facts or claims against its insured concerning the care, cutting or shampooing of the plaintiffs' hair after the surgeries. If the insured knew of such claims, they never notified National and instead entered into agreements which per-

**20**

mitted plaintiffs to get judgment for claims never alleged and never disclosed to National. A clearer miscarriage of justice could not be shown. An application for intervention made after final judgment is timely only in "extraordinary and unusual circumstances." *State Farm Mutual Automobile Insurance Company v. Paynter*, 118 Ariz. 470, 577 P.2d 1089 (App.1978). Such circumstances exist here and the trial court abused its discretion in not allowing intervention so that National could pursue relief under Rule 60.

As for the appeal by the appellants allegedly represented by Arthur Miller, it is the contention of these appellants that Arthur Miller does not represent them, that they have settled their case with the plaintiffs and that absent their consent, Miller cannot file an appeal on their behalf. Miller, who was hired by National, contends that since the insurance company never had notice of the claims, it has a right to represent the insured and pursue this appeal in spite of their consent. In view of our disposition of the appeal by National, we need not address this issue. National will have its opportunity to pursue Rule 60 relief. The appeal of appellants Esquire For Men, Inc., Esquire Labs of Arizona, Inc., the Behars and the Singers is moot.

The order denying intervention is vacated and set aside and the trial court is instructed to enter an order granting intervention to National Indemnity Company. The appeal by the rest of appellants is dismissed.

HATHAWAY and BIRDSALL, JJ.