Santos ROCHA and Denise
Rocha, Appellants,

v.

**METROPOLITAN PROPERTY
AND CASUALTY INSURANCE
COMPANY, Respondent.**

No. WD 56855.

Missouri Court of Appeals,
Western District.

Submitted Aug. 12, 1999.

Decided Feb. 15, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 28, 2000.

Application for Transfer Denied
April 25, 2000.

Thomas E. Hankins, Gladstone, for appellant.

Lawrence P. Warshaw, Kansas City, for respondent.

Before HAROLD L. LOWENSTEIN, P.J., JAMES M. SMART, Jr., and JOSEPH M. ELLIS, JJ.

JAMES M. SMART, Jr., Judge.

Santos and Denise Rocha appeal a grant of summary judgment entered in favor of Metropolitan Property and Casualty Insurance Company ("Metropolitan"). The Rochas brought a garnishment action against Metropolitan to collect on a judgment against Anthony Vincent Cammisano for injuries that Santos Rocha received as the result of a shooting at the Rocha home on August 19, 1992. At that time, Anthony Cammisano was fifteen years old and was an insured under his parents' homeowner's insurance policy with Metropolitan.

The circuit court granted Metropolitan's motion for summary judgment on the basis that coverage is excluded by the policy's "intentional and criminal acts" exclusion. We agree that Metropolitan's motion for summary judgment should have been granted, and affirm the trial court's ruling, but base our conclusion on other grounds.

### Background Facts

Nino Peranio and Gaetano D'Angelo picked up Cammisano at his home in Kansas City, Missouri at about 7:00 p.m. on August 19, 1992. The three teens drove to Taco Bell, where they met up with two more school friends, Joe Spano and Sal Cusumano. Spano and Cusumano were with nineteen-year-old Joseph Mangiaracina, with whom Cammisano was not acquainted.

While at Taco Bell, Spano described a dispute that he was having with Jason Rocha, the son of Santos Rocha. The six men decided to go over to the Rocha house, where Spano talked with Chris Rocha, Jason's brother, for several minutes. The six left the Rocha house and drove to another restaurant. Peranio and D'Angelo left. Shortly after Peranio and D'Angelo left, Chris Rocha, along with "ten to fifteen guys," came in and surrounded the table where the four in the Spano group were sitting. There was some heated discussion between Chris Rocha and Spano. Chris Rocha asked Spano to step outside to fight. When Spano declined, Chris Rocha and his group left.

Shortly thereafter, Peranio and D'Angelo came back into the restaurant. The others told them about the confrontation with Chris Rocha and his group. The six decided to go back to the Rocha house. Mangiaracina said, "let's go make a hit," and all prepared to leave. Cammisano thought that remark meant, "let's go have a fistfight."

Peranio, D'Angelo, and Cammisano were in Peranio's vehicle and the other three were in Mangiaracina's vehicle. Cammisano testified that because he knew both the Rocha boys (Jason and Chris), he planned on and hoped to be able to make peace between his group and the Rochas before any fighting took place. Cammisano did not express this thought to any of the other five in his group. However, he testified that he had acted as a peacemaker before and believed he could "talk some sense to them." If he could not make peace, however, Cammisano testified that he intended to participate in the fistfight against the Rochas. He testified that he never saw any firearms, never heard anyone mention using them, and was not aware that Mangiaracina or anyone else intended to use firearms against the Rochas.

Upon arriving at the Rocha house, Mangiaracina parked in front, and Peranio

parked farther up the street. Cammisano saw Mangiaracina get out of his car and approach the house. Cammisano then heard a shot fired before any of them got out of Peranio's car. Peranio drove off when they heard the shot. It was only later, according to Cammisano, that he learned what happened at the Rocha house.

The facts developed in testimony at Mangiaracina's criminal trial indicated that Mangiaracina was armed at the time of the incident with a 12 gauge sawed-off shotgun and a .25 caliber handgun. Upon arriving at the Rocha house, Mangiaracina brought the weapons to the front door and knocked. As Santos Rocha, the father of Chris Rocha, turned on the porch light, Mangiaracina fired a shotgun blast through the door and also shot his .25 caliber handgun into the residence. Santos Rocha was struck by the shotgun blast just after he turned on the porch light, but before he actually opened the door. The shot went through the door and struck Rocha in the abdomen. At his criminal trial, Mangiaracina was convicted of the shooting and sentenced to prison.

Santos Rocha survived the shooting but suffered severe injuries. On May 5, 1994, the Rochas filed a lawsuit against numerous defendants, including Cammisano, alleging that the defendants participated in a conspiracy to inflict retribution on Jason Rocha. Cammisano notified Metropolitan of the lawsuit and Metropolitan began a defense of Cammisano with a reservation of rights. On October 6, 1994, Metropolitan took the position that the policy excluded coverage for the conspiracy alleged in the petition. Metropolitan notified Cammisano that it was terminating his defense under the lawsuit for that reason.

A year later, on October 5, 1995, the Rochas filed an amended petition against the defendants, alleging that Cammisano was negligent in failing to take steps to warn the Rochas or to prevent the shooting. Cammisano failed to notify Metropolitan of the amended petition containing the allegation of negligence.

Cammisano and the Rochas entered into a contract to limit recovery to the insurance contract, pursuant to § 537.065, RSMo 1994,[1] in which the Rochas agreed not to levy execution on this judgment except as to any insurer insuring the legal liability of Cammisano. Finding that the terms of the agreement were fair and reasonable, the trial court entered a judgment on June 16, 1997, awarding the Rochas damages in the amount of $3,000,000.00 ($2,500,000.00 to Santos for his injuries and expenses arising from those injuries and $500,000.00 to Denise for loss of companionship, consortium, and services).

Having obtained their judgment, Santos and Denise Rocha sued Metropolitan pursuant to § 379.200 to collect under the homeowner's coverage in a garnishment action. It was only after this suit was filed that Metropolitan learned of the amended petition and the settlement agreement. Both parties filed motions for summary judgment in the garnishment action. The trial court denied the Rochas' motion for summary judgment and granted Metropolitan's motion based on the ground that Cammisano's actions were intentional and criminal and, thus, were not covered under the Metropolitan policy. The Rochas appeal.

### Standard of Review

In determining whether the trial court's grant of summary judgment was appropriate, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our standard of review on an appeal of summary judgment is *de*

---

1. All statutory references are to Revised Statutes of Missouri, 1994, unless otherwise indicated.

*novo.* *Id.* An appellate court's criteria on appeal for determining whether summary judgment is proper are the same as those that should be used by the trial court in its initial summary judgment determination. *Id.* We owe no deference to the trial court since we base our decision on the same factual record that the trial court had before it. *Colgan v. Washington Realty Co.,* 879 S.W.2d 686, 688 (Mo.App.1994). Under Rule 74.04, a movant must establish his right to judgment as a matter of law. *Id.* A movant who is a defendant may do so by showing facts that negate any one element of the plaintiff's claim. *Tresner v. State Farm Ins. Co.,* 913 S.W.2d 7, 9 (Mo. banc 1995).

Metropolitan argues that there is no coverage because the policy specifically excludes coverage for any bodily injury which is "reasonably expected or intended" by the insured or which is the result of the insured's "intentional or criminal acts." Metropolitan asserts that Santos Rocha's injuries were both "reasonably expected or intended" and the result of Cammisano's "intentional or criminal acts" and are, therefore, not covered under the policy. The trial court granted Metropolitan's motion for summary judgment on those grounds.

■ We note that there are several possible theories on which summary judgment was argued by Metropolitan, and which are now asserted on appeal in support of the judgment. One of Metropolitan's contentions is that there is no coverage because Metropolitan was never notified of the amended petition which alleged negligence on the part of Cammisano in not preventing the shooting. Our initial review of the factual record causes us to conclude that, in view of the stipulations, the analysis on the "intentional and criminal act" exclusion is more difficult for summary judgment purposes than the alternative contention related to violation of the cooperation clause of the policy. This court may affirm the trial court if it finds that respondent was entitled to

judgment as a matter of law for any reason appearing in the record. *Zafft v. Eli Lilly & Co.,* 676 S.W.2d 241, 243 (Mo. banc 1984). If the trial court's ruling can be sustained under any theory, it must be affirmed. *Chase Resorts, Inc. v. Safety Mutual Cas. Corp.,* 869 S.W.2d 145, 148 (Mo.App.1993). Because it appears that Metropolitan is entitled to judgment as a matter of law due to Cammisano's failure to cooperate with the policy's notice provisions, we need not determine whether the trial court's ruling on "intentional and criminal act" exclusion was correct.

### Failure to Comply with Policy Requirements

■ Cammisano's insurance policy contains the following applicable provisions under Section II "Personal Liability" and "Medical Payments to Others":

**Section II – Conditions:**

3. Your Duties in The Event Of An Accidental Loss. In the event of an accident or occurrence, you must do the following things:

 A. Promptly notify us or our representative, in writing . . . .

 B. Immediately send us any legal papers relating to the accident.

\* \* \*

 E. You must not voluntarily pay any money, assume any obligations, or incur any expenses, other than for first aid to others at the time of the loss as provided for in this policy.

\* \* \*

6. **Lawsuits Against Us.** No suit or action may be brought against us by you unless there has been full compliance with all of the policy terms.

Cammisano did not comply with the policy provisions mandating that he notify Metropolitan of the allegations and forward copies of legal papers that he received related to the claim. The amended petition differed from the original petition

in pleading a claim of negligence for failure to warn about the shooting and failure to prevent the shooting. Whereas, the original petition alleged a conspiracy to exact retribution, this petition specifically alleged a failure to warn or to take actions to avoid the shooting as a theory of liability. Cammisano, however, provided no notice to the insurer. Further, Cammisano proceeded to negotiate a settlement of the claim without any notice to Metropolitan. In an action to recover on an insurance policy, an insured must prove either that he complied with the policy provisions that require performance on his part or that he has an acceptable excuse for non-performance. *Tresner*, 913 S.W.2d at 9–10. The Rochas offer no indication of any excuse in this case for the failure to notify Metropolitan of the amended petition.

In *Dickman Aviation Serv., Inc. v. U.S. Fire Ins. Co.*, 809 S.W.2d 149, 150 (Mo. App.1991), Dickman Aviation was being sued to recover for damages to an airplane engine that it had recently repaired. The original petition stated various claims against Dickman, including breach of contract, express warranty, implied warranty, and misrepresentation. *Id.* Dickman's insurer, U.S. Fire, declined to defend on the basis that the alleged loss did not result from "an occurrence" as defined in the policy. *Id.* The plaintiff then filed an amended petition against Dickman containing a fifth count alleging that in the repair of the engine, Dickman "negligently and carelessly improperly installed" parts. *Id.*

Dickman did not notify U.S. Fire of the amended petition. Subsequently, the parties went to trial and judgment was entered in favor of the plaintiff against Dickman. *Id.* at 151. Dickman then sought to recover the amount paid in satisfaction of that judgment from its insurer, U.S. Fire. *Id.*

The insurance policy in that case contained provisions that were almost identical to the above quoted provisions in Cammisano's policy. It stated that the insured must "immediately forward to the company every demand, notice, summons or other process received by him[.]" *Id.* at 151. And, as in Cammisano's policy, Dickman's policy had a provision stating that "[n]o action shall lie against the company" unless there had been full compliance with the terms of the policy. *Id.*

The court in *Dickman* affirmed the trial court's grant of summary judgment to U.S. Fire, reasoning that when the insureds were served with the amended petition, they were bound by the provision that required them to immediately forward it to U.S. Fire, despite the fact that U.S. Fire had declined to defend on the original petition. *Id.* at 152. According to the court, U.S. Fire was entitled to determine if recovery upon the new allegation would be covered and to have the opportunity to defend upon that count. *Id.* The court stated, "The law is clear that an insurer must be given notice of an amended pleading which would impose a duty to defend, and a failure to give notice will relieve the insurer of liability . . . ." *Id.* at 153 (quoting *Salvatierra v. National Indem. Co.*, 133 Ariz. 16, 648 P.2d 131, 134 (1982)).

The court rejected Dickman's contention that U.S. Fire had abandoned its right to control the defense when it declined to defend Dickman on the original pleadings. The court noted that when the allegations in the original petition bring the action within coverage under the policy, the insurer is obligated to defend the insured, but if the alleged facts on the original petition fail to bring the case within the policy coverage the insurer is free of the obligation to defend. *Id.* at 153. Where an insured is served with an amended petition setting out a new cause of action, the insurer has the right to determine whether the new count is within its coverage and to reexamine its decision on whether to actively participate in a defense against that new claim. *Safeco Ins. Co. of Am. v. Rogers*, 968 S.W.2d 256, 258 (Mo. App.1998). The insured's violation of a

cooperation clause relieves the insurer of liability to the insured. *Id.*

### Duty to Defend

■ The Rochas argue that Metropolitan had a duty to defend Cammisano as to the amended petition. They do not argue that the original petition created a duty to defend, arguing instead that the amended petition placed the claim within the policy coverage. We agree that the amended petition pleaded a purported action in negligence.[2] But in our review of the insured's failure to cooperate, we must first review the issue of whether there was a duty to defend under the original petition. The pertinent paragraphs of the original petition stated as follows:

> Defendants and each of them knew prior to their arrival at the Rocha residence that the nature of their journey to said residence was to seek revenge on Jason Rocha.

> * * *

> Defendants conspired to exact retribution on Jason Rocha, and their negligent conduct resulted in the injuries sustained by Santos Rocha in that D'Angelo, Cammisano, Piranio, Spano and Cusumano knowingly accompanied Mangiaracina to the Rocha residence, and knew that the journey to the Rocha residence was to exact retribution on Jason Rocha for perceived wrongs and/or statements committed or made by Jason Rocha.

The petition asserted that Cammisano and the others had conspired to inflict damage on Jason Rocha. The participants clearly were alleged to be involved in an intentional, criminal activity. A conspiracy is, by definition, intentional conduct. Although the petition used the word "negligent" in describing the conduct of Cammisano and others at the time of the shooting, the word does not cohere with allegations of the conspiracy to "exact retribution," and the "knowing accompaniment" to "exact retribution." It is obvious there was no attempt to plead a cause of action in negligence.

We hold that Metropolitan did not breach a duty to defend arising out of the original petition. Accordingly, Cammisano was not relieved of the duty to forward a copy of the amended petition to his insurer by reason of any default on the part of Metropolitan. Moreover, Cammisano offers no excuse of any kind for failing to notify Metropolitan of the amended petition and failing to notify Metropolitan of its negotiations.

### Prejudice

■ It is the law in Missouri that when an injured person has obtained a judgment against an insured defendant, "the judgment creditor stands in the shoes of the insured person" and he has no greater and no lesser rights than the insured with regard to recovery from the insured's insurance company. *Greer v. Zurich, Ins.*, 441 S.W.2d 15, 30 (Mo.1969). Policy conditions requiring that the insured immediately notify the insurance company of a claim and forward all legal documents to the insurer are valid, enforceable, binding, and of vital importance to the insurer. *Dodson v. State Farm Gen. Ins. Co.*, 972 S.W.2d 450, 452 (Mo. App.1998); *See also Greer*, 441 S.W.2d at 30; *Donlon v. American Motorists Ins. Co.*, 147 S.W.2d 176, 178 (Mo.App.1941); *Nevil v. Wahl*, 228 Mo.App. 49, 65 S.W.2d 123, 127 (1933). The courts in Missouri have stated that the necessity to do so goes to the very essence of the insurance

---

2. We are not persuaded that the amended petition stated a cause of action, because it did not plead special circumstances or a special relationship creating a tort duty on the part of Cammisano to protect or warn Santos Rocha of the potential actions of a third party.

*See Vittengl v. Fox,* 967 S.W.2d 269 (Mo.App. 1998). Thus, it may have been subject to a motion to dismiss. Nevertheless, we agree that the amended petition would have created a duty to defend if Metropolitan had been notified.

contract. *Donlon,* 147 S.W.2d at 179; *Nevil,* 65 S.W.2d at 128.

██ One of the factors to be considered in determining whether there was a material breach of the contract is whether the failure to notify the insurer was likely to result in prejudice to the insurer. *Greer,* 441 S.W.2d at 32. In *Anderson v. Slayton,* 662 S.W.2d 575, 577–78 (Mo.App. 1983), this court examined the issue of whether prejudice to the insurer can ordinarily be presumed from the failure of the insured to forward suit papers which denies the insurer the opportunity to defend. We held in *Anderson* that where there is an unexcused failure to forward suit papers to the insurer, prejudice will be presumed. *Id.* In such cases, the insurer will generally be disadvantaged in its capacity to compromise and settle the claim. Such a disadvantage is difficult to prove, and it would be unjust to force the insurer to demonstrate prejudice in such a case. *Id.* at 578. Accordingly, where the failure to provide notice is unexcused, prejudice will be presumed. Cammisano makes no argument, and we see no indication in this case, that the presumption of prejudice can be overcome.

### Conclusion

Cammisano failed to give Metropolitan the opportunity to defend the new charges of negligence by failing to notify it of the amended petition. Because the failure to notify Metropolitan was unexcused, it gives rise to the presumption that Metropolitan was prejudiced. Accordingly, therefore, we affirm the trial court's grant of summary judgment to Metropolitan.

LOWENSTEIN and ELLIS, JJ., concur.