Patricia M. FRIEND,
Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant–Respondent.

No. 15097.

Missouri Court of Appeals,
Southern District,
Division One.

Feb. 17, 1988.

Rehearing Denied March 10, 1988.

J. William Turley, Rolla, for plaintiff-appellant.

Dan L. Birdsong, Thomas, Birdsong, Clayton & Haslag, P.C., Rolla, for defendant-respondent.

GREENE, Presiding Judge.

Plaintiff, Patricia M. Friend (Pat), appeals from the entry of summary judgment in favor of defendant, State Farm Mutual Automobile Insurance Company (State Farm). We affirm.

On appeal, Pat alleges the trial court erred in sustaining State Farm's motion for summary judgment because (1) the evidence in the record established a genuine issue as to the elements of her claim which entitled her to a jury determination and (2) the materiality of her breach of the policy conditions under the uninsured motorist provision was a question of fact and State Farm did not show how it was prejudiced by her failure to comply therewith.

The record bears out the following facts. On August 9, 1984, at approximately 3:00 p.m., Pat and her husband, Michael, were riding recently purchased "mountain" bicycles on a county highway in Phelps County, Missouri. Michael was bicycling in front of Pat when he became aware that Pat was no longer in sight. Mike turned his bicycle around and went back to where he found Pat lying unconscious in a pool of her own blood, with her body partially on the highway and partially on the shoulder of the roadway. A passing motorist stopped and Michael asked him to telephone an ambulance. An unidentified state trooper and an ambulance arrived at the scene.

In discussing the accident, the trooper inquired of Michael if a vehicle was involved. Michael told the trooper, "no," he did not believe so. Michael heard no collision noise, tires squealing, horn honking, nor did he notice any visible debris around the accident area. Apparently the bicycle Pat was riding sustained no damage, except for a tear in the seat. Pat was hospitalized for approximately 25 days with multiple injuries.

After Pat was released from the hospital, she said that "the family was trying to figure out how I ... could have been hit." The family determined that a light or cream colored pickup carrying lumber, which Pat remembered seeing on the highway, must have struck her. Pat has total amnesia regarding the bicycle ride, except she remembers hearing a vehicle, looking over her left shoulder, and seeing a small truck approaching from approximately "15 to 20 long strides" behind her.

On December 28, 1984, attorney William E. Hickle wrote State Farm a lien letter advising State Farm that he represented Pat regarding her claim for injuries and that "[o]n August 9, 1983 [sic], at approximately 3:00 p.m., Mrs. Friend was struck by a vehicle while riding her bicycle on Route BB, Phelps County, Missouri, causing said injuries. The driver of the vehicle remains unknown. We expect to complete the compilation of records on our client's loss in the reasonably near future. When I have all those records, I will contact you to discuss this matter further." The letter further instructed State Farm not to contact Pat "for any reason."

On March 7, 1985, Pat and Michael filed suit against State Farm alleging Pat was struck by an "uninsured motor vehicle" on August 9, 1984, in which suit they alleged that they had "complied with the terms and conditions" of State Farm's policy, and had "performed all conditions precedent to recover" thereunder, but that State Farm had failed and refused to abide by the policy provisions. Pat sought $120,000 damages and Michael requested $15,000. Michael later dismissed his cause of action against State Farm.

After discovery procedures, including the taking of depositions, State Farm, pursuant to Rule 74.04 Missouri Rules of Court, V.A.M.R., filed a motion for summary judgment with attached suggestions in support, and an affidavit of its resident claim supervisor, F. Bennett Lilley. Mr. Lilley's affidavit stated the following:

(1) State Farm had not received a report from the Friends regarding the accident.

(2) The Friends had never signed nor filed a claim form for the accident.

(3) The first contact and knowledge State Farm had of this alleged accident was by letter dated December 28, 1984, (over 4 months after the accident date) when the attorney sent a lien letter to State Farm alleging two different dates of the accident—August 9, 1983 and August 9, 1984—and revoking any prior medical authorizations State Farm may have received, plus instructing State Farm to refrain from contacting Pat.

(4) The first part of January 1985, State Farm's adjuster left a claim report with Pat's attorney. The attorney had refused to have the Friends sign it.

(5) On February 6 and February 11, 1985, the adjuster had contacted the attorney requesting an appointment to take the Friends' statements. The attorney said he could not set up such appointment.

(6) On March 7, 1985, the attorney advised State Farm he had no intention of letting their adjuster take the Friends' statements, but that the adjuster could review the attorney's file for medical information.

(7) On March 8, 1985, suit was filed against State Farm. These allegations were not contested by the Friends.

Pat filed suggestions in opposition, declaring that there were genuine issues of fact regarding whether she was struck by a hit-and-run driver, and that State Farm had filed its motion for summary judgment "simply because (it) fears and distrusts the workings of the jury system." Pat also claimed that there was no showing State Farm had been prejudiced by her failure to comply with the policy provisions.

After a hearing, the trial court sustained State Farm's motion for summary judgment.

State Farm's policy contains the following provisions:

**4. Other Duties Under Medical Payments, Uninsured Motor Vehicle, Death, Dismemberment and Loss of Sight, Total Disability and Loss of Earnings Coverages.**

. . . .

c. under the uninsured motor vehicle coverage:

(1) report a 'hit-and-run' accident to the police within 24 hours and to us within 30 days. . . .

In her appeal, Pat does not contend that the alleged hit-and-run episode was reported to *any* law enforcement agency within 24 hours, and/or that the incident was reported to State Farm within 30 days. She claims that her failure to give the insur-

ance company notice until almost five months after the alleged hit-and-run accident did not "materially" breach section 4.c(1) of the policy. She further states that "materiality" is a question of fact, which issue should not be decided summarily, and that State Farm did not show in its motion for summary judgment and accompanying documents that it had been prejudiced by receiving the late notice.

Cases of this type involving unidentified hit-and-run (sometimes called "phantom") vehicles were the subject of appeals in *Girard v. State Farm Mut. Auto. Ins. Co.*, 737 S.W.2d 254 (Mo.App.1987), and *Billings v. State Farm Mutual Auto Ins. Co., et al*, 741 S.W.2d 886 (E.D.Mo.App.1987).

In *Girard*, appellant was a passenger in an automobile she alleged was forced off the road by a "phantom vehicle," causing the accident in question. Girard sued the driver of the car she was riding in, alleging negligence, and sued State Farm under the uninsured motorist provision of her policy. State Farm moved for summary judgment, claiming it had not received timely notice as required under the uninsured motorist provisions of its policy, which provided that in unidentified hit-and-run cases, the police were to be notified within 24 hours and the insurance company within 30 days. Plaintiff admitted she had not complied with those provisions. The trial court sustained the motion for summary judgment.

On appeal, Girard made the same contentions as are raised here. The Western District of the Court of Appeals, speaking through Manford, J., held:

Appellant asserts the existence of two issues of material fact which, if found to exist, would prohibit the entry of summary judgment. These two alleged issues of material fact are: (a) substantial compliance with the requirements of respondent's policy as set forth above, and (b) the issue that respondent was not prejudiced. There is no merit to either assertion.

It is not disputed by the parties herein and, indeed it is conceded by appellant, that she never advised any law enforcement agency of any 'phantom vehicle' within 24 hours of the accident. In addition, it is undisputed and likewise conceded by appellant that she never informed respondent of any 'phantom vehicle' within 30 days of the accident. The record discloses that respondent was first advised of the matter when appellant filed her lawsuit almost eighteen months subsequent to the accident.

The foregoing facts and appellant's concession to their validity defeat her assertion of any substantial compliance with the terms of respondent's policy. The foregoing requirements are, within the terms of the policy, clear and unequivocal declarations of conditions precedent to acknowledgment of coverage and the presentment of any claim under the uninsured motorist section of respondent's policy. Having failed to satisfy either or to have even shown an attempt to satisfy either condition precedent, appellant defeats any assertion of substantial compliance.

Appellant's reliance upon *Greer v. Zurich Insurance Co.*, 441 S.W.2d 15 (Mo. 1969), and *Dixon v. United State Fidelity & Guaranty Co.*, 155 S.W.2d 313 (Mo. App.1941), is misplaced as they do not, under the facts and circumstances herein, support her assertion of substantial compliance. In both of those cases, the court ruled that the language was sufficiently equivocal so as to permit coverage. The policy in the present case is unequivocal in its terms and prescribes the 'duties' necessary to the presentment of a claim under the uninsured motorist coverage section of the policy.

. . . .

The second assertion presented by appellant is that the trial court erred in entering summary judgment because there existed an issue of material fact, to wit: whether respondent was prejudiced by the delay.

As noted above, it is conceded by appellant that notice of a 'phantom vehicle' was never given any law enforcement agency and certainly not within the period of 24 hours prescribed by the policy. As previously noted, appellant also con-

cedes that notice of a 'phantom vehicle' was never given respondent until such allegation was presented in her petition some 18 months subsequent to the accident.

The breach occasioned by appellant's inaction was material. The failure to notify a law enforcement agency of any 'phantom vehicle' thus neither caused a law enforcement agency to investigate for a 'phantom vehicle,' nor provided cause for respondent to enter upon such an investigation.

As presented by respondent, some eight of our sister states have ruled this question. This issue is presented for the first time in our own state. (Citations omitted.)

The foregoing authority describes the rationale employed by the courts of our sister states in the disposition of the question of prejudice to an insurer under circumstances comparable to the present case. Those authorities are persuasive.

It is ruled herein that as a direct result of appellant's failure to comply with the above conditions precedent, both of which were required, she caused a material breach of the policy. Her assertion of substantial compliance is unsupported upon the record, particularly in light of her concession that she never complied with either requirement.

It is further ruled that as a direct result of appellant's failure to report a 'phantom vehicle,' respondent was prejudiced concerning its right to timely investigate any allegation of a 'phantom vehicle' so that determination of the existence or nonexistence of a spurious claim could be made under the provisions of the uninsured motorist section of respondent's policy.

The decision in *Girard* was followed in *Billings*, which adopted and approved the rationale of *Girard*, adding, on page 5 of the slip opinion, the following language:

Strong public policy interests are protected through the use of notice provisions. For, the insured public will incur additional and unnecessary costs if insurers are forced to pay stale claims, as to which the insurer has not been accorded the opportunity to conduct an investigation while the facts are still fresh. This consideration is particularly acute in a situation such as the present case, where an unidentified, 'hit and run' or 'phantom' vehicle is involved. *See also: State Farm County Mutual Insurance Company of Texas v. Landers*, 520 S.W.2d 604, 606 (Tex.Ct.App.1975) (upholding an uninsured motorist provision which required notification to the police within twenty-four hours of an accident); *Shamrock Casualty Co. v. Mack*, [61 Misc.2d 240], 305 N.Y.S.2d 525, 528–29 (N.Y.Sup.Ct.1969) (validating an uninsured motorist provision which mandated that one report an accident to the police within twenty-four hours or as soon as reasonably possible and to the insurer within ninety days); and *Hartford Accident & Indemnity Co. v. Creasy*, 530 S.W.2d 778, 779 (Tenn.1975) (sanctioning uninsured motorist coverage obligating that the insurer be given notice within thirty days of the accident.)

We agree with the reasoning and holdings of *Girard* and *Billings*, and find that there is no logical reason in this case to hold that the notice requirements of section 4.c(1) of the policy in question are not conclusive. State Farm, under the facts of this case, was entitled to summary judgment as a matter of law, and no genuine issue of material fact exists.

Judgment affirmed.

CROW, C.J., concurs.

HOLSTEIN, J., concurs and files concurring opinion.

HOLSTEIN, Judge.

I concur in the principal opinion. However, I believe the case now before us is factually distinguishable from *Girard* and *Billings*. Those cases did not involve a situation where the insured was physically or mentally incapacitated following the accident. In this case, the insured was unconscious for 11 days and hospitalized for a period of 25 days following the accident. She sustained severe head injuries caused

by a sudden and violent blow, resulting in a period of amnesia. Some delay in notifying law enforcement officers and the insurance company is understandable and excusable. The public policy interests which are served by enforcing the notice provisions of the policy are outweighed by a countervailing public policy interest in protecting insureds who are physically or mentally incapable of communicating such notice to their insurer. See *Schoen v. American Nat'l. Ins.*, 352 Mo. 935, 180 S.W.2d 57, 59 (banc 1944).

The evidence indicates that at about the time of her discharge from the hospital, appellant had regained her memory of the events just prior to the accident and her ability to communicate. Appellant's failure to give notice to the insurer within 30 days after her discharge from the hospital remains unexplained and, consequently, is unexcused.

I also disagree with the use of the term "phantom vehicle" in cases such as this. The trial court entered summary judgment not because it found that there was no vehicle involved, but because of the appellant's failure to comply with the notice provisions. On appeal from a summary judgment, we view the record in a light most favorable to the appellant. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984). Viewing the record in that light, appellant was not struck by a phantom vehicle but by a real vehicle. The harsh reality of the vehicle is supported by appellant's recollection of seeing a vehicle with boards extending from it on a collision course with her just before the accident and the testimony of two physicians that the nature and extent of appellant's injuries to her head were not likely caused by a fall from a bicycle, but were consistent with a high speed collision with a vehicle.

Subject to the reservations noted, I concur.