Leland TRESNER, Appellant,

v.

STATE FARM INSURANCE COMPANY,
Respondent.

No. 78173.

Supreme Court of Missouri,
En Banc.

Dec. 19, 1995.

8

Joseph A. Hamilton, Pleasant Hill, Missouri, for Appellant.

Norman I. Reichel, Arlen L. Tanner, Pat McGrath, Kansas City, Missouri, for Respondent.

PER CURIAM[1].

After being injured in an automobile accident, Leland Tresner filed suit to recover damages based upon the uninsured motorist coverage in his automobile insurance policy issued by State Farm Insurance Company. The trial court entered summary judgment in favor of State Farm because Tresner failed to comply with the notice provisions in the policy. Tresner now appeals, claiming that the trial court erred in granting summary judgment because there are genuine issues of material fact concerning whether Tresner was physically incapable of providing notice after the accident, whether State Farm was actually prejudiced by the late notice, and whether Tresner was in substantial compliance with the policy's notice provisions.

The judgment is reversed and the cause remanded.

On September 14, 1991, Tresner was driving an automobile in the inside eastbound lane of Interstate 70, which is a four-lane divided highway. According to the report filed by the Missouri Highway Patrol, Tresner lost control of his vehicle in the heavy rain. The Tresner vehicle crossed the median strip in the center of the highway, vaulted into the air and collided with another vehicle, which was traveling in the outside westbound lane.

Tresner's wife, who was a passenger in his vehicle, died in the accident, as did both occupants of the other vehicle. Tresner was transported by helicopter from the scene of the accident to the hospital where, on the night of the accident, he underwent the first of a number of surgeries for his injuries. Those injuries included a broken pelvis, a broken knee, compound fractures in both ankles, a crushed foot, a broken femur, collapsed lungs, broken ribs, a bruised heart, a severed artery and internal bleeding.

During the three to four weeks that followed, Tresner underwent approximately a dozen surgeries, including operations to put steel plates in his leg and left foot and bolts in his knee and both feet. In addition, upon his arrival at the hospital Tresner had a tracheotomy and was on a ventilator to facilitate his breathing. The tracheotomy tube remained in place until its removal on October 16, 1991. Tresner also was given morphine for approximately thirty days after his arrival at the hospital.

---

1. The appeal in this case was originally decided by the Court of Appeals, Western District, in an opinion written by The Honorable Patricia Breckenridge. Following transfer to this Court, the court of appeals opinion, with minor editorial changes, is adopted as the opinion of this Court.

Tresner was released from the hospital on October 24, 1991, having spent his entire time there in the intensive care unit. From the hospital, Tresner was transported to Garden City, Kansas, where he stayed at his mother's house to recuperate. Four days later, on October 28, 1991, Tresner telephoned James Hager, a State Farm claims representative, and made a tape-recorded statement describing the accident. The telephone call was his first contact with State Farm after the accident.

During the conversation, Hager asked Tresner if any other vehicle had contributed to the accident. Tresner replied that a pickup truck had pulled up alongside his vehicle in traffic and began edging sideways into his lane of the highway, causing Tresner to swerve onto the road shoulder in order to avoid hitting it. According to Tresner, he lost control of his vehicle as a result of this evasive maneuver.

Hager had first been informed of the accident on September 16, 1991, and communicated with Tresner's family while Tresner was in the hospital. However, this communication included no mention of a phantom vehicle. Law enforcement authorities were first informed of the phantom vehicle on November 19, 1991. On that date, Tresner's attorney communicated the assertion that a phantom vehicle caused the accident to Missouri Highway Patrol Trooper Steven L. Robinson, who had performed the initial investigation at the time of the accident.

The automobile insurance policy issued to Tresner by State Farm defined the policyholder's duty to report an accident. The policy stated, in general, that "[t]he insured must give us or one of our agents written notice of the accident or loss as soon as reasonably possible." The policy further provided that, in the case of a claim involving an uninsured motor vehicle, the insured shall "report a 'phantom vehicle' accident to the police within 24 hours and to us within 30 days."

On March 2, 1992, Tresner filed suit against State Farm, seeking damages pursuant to the uninsured motorist provisions of his automobile insurance policy. State Farm denied coverage on the basis that Tresner had failed to comply with the notice provisions set forth in the policy. State Farm filed a motion for summary judgment, claiming that Tresner had breached a material condition of the policy by failing to provide timely notice of the accident and, therefore, no coverage existed for Tresner's damages.

State Farm's motion for summary judgment was not decided by the trial court before the case went to trial. The trial resulted in a hung jury. Subsequently, on January 18, 1994, the trial court entered an order sustaining State Farm's motion for summary judgment. In its order, the trial court concluded that State Farm was entitled to summary judgment if Tresner had failed to comply with either the twenty-four hour or the thirty-day deadline, and that Tresner had failed to comply with them both. Tresner appeals the judgment.

This Court, in reviewing the trial court's order of summary judgment, will consider the record in the light most favorable to the party against whom judgment was entered and afford that party all reasonable inferences that may be drawn from the evidence. *ITT Commercial Finance v. Mid-Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). The moving party bears the burden of proving that it is entitled to summary judgment as a matter of law and that no genuine issues of material fact exist. *Id.* at 378. Where the movant is a "defending party," the movant "may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *Id.* at 381.

In an action to recover on an insurance policy, an insured must prove that he complied with the policy provisions that require some kind of performance on his part, or he must show a sufficient excuse for his nonperformance. *Miles v. Iowa Nat. Mut.*

*Ins. Co.*, 690 S.W.2d 138, 142 (Mo.App.1984). When an insured fails to comply with a policy provision requiring timely notice of the accident insured against, Missouri case law offers two alternative doctrines under which an insured's failure to provide timely notice might be excused under circumstances like those in the case at bar. First, there is *the excuse of incapacity*, where the very accident insured against leaves the insured incapacitated to the extent that it is impossible for him to provide timely notice. *Roseberry v. American Benevolent Ass'n*, 142 Mo.App. 552, 121 S.W. 785 (1909). Alternatively, the insured may show *substantial compliance* with the timely notice provision, "thus excusing literal performance." *Miles*, 690 S.W.2d at 142.

The Missouri cases dealing with late notice by the insured appear to suggest that these two doctrines are interchangeable factors in a single analysis to determine whether an insured's late notice constitutes a material breach of the insurance contract justifying the insurer's avoidance of liability. See, e.g., *Greer v. Zurich Insurance Company*, 441 S.W.2d 15, 30–31 (Mo.1969); *Brown v. Highway and Transp. Com'n*, 805 S.W.2d 274, 279 (Mo.App.1991). Nevertheless, as this Court indicated in *Moskowitz v. Equitable Life Assur. Soc. of U.S.*, 544 S.W.2d 13, 18 (Mo. banc 1976), the excuse of incapacity or impossibility of performance and the excuse of substantial performance are two entirely separate analyses to apply to an insured's failure to comply with the literal provisions of a notice requirement. These two distinct doctrines are raised in separate points on appeal in the case at bar.

The seminal Missouri decision applying the excuse of incapacity to the notification provisions in an insurance policy is a case that rests on facts strikingly similar to those in the case at bar. In *Roseberry*, 121 S.W. 785, the plaintiff was a railroad pumpman who was issued an accident policy by the defendant. The policy included a provision that the plaintiff was required to notify the defendant within ten days of any accidental injury, and this requirement was a condition precedent to recovery under the policy. *Id.* at 786.

The plaintiff was injured on the job when he spilled some gasoline on his trousers and the fluid was ignited by a nearby lantern. Because of the severity of his burns and the administration of opiates to ease his pain, the plaintiff was essentially unconscious for three weeks after the accident. The insurance company received its first notice of the accident nineteen days after the incident occurred.

The defendant denied coverage because the plaintiff failed to provide notice of the accident within the ten-day period established by the policy. The plaintiff obtained a judgment against the defendant on the ground that he was excused from compliance with the notice provisions since he had been rendered unconscious from the burns and medication.

In affirming the judgment, the court of appeals held that the plaintiff was excused from complying with the policy's ten-day notice requirement; it explained that "notice given *within a reasonable time* after plaintiff became conscious will be sufficient." *Id.* at 787 (emphasis added). In other words, *Roseberry* established the rule that when an insured is unable to report an accident within the time period required by the notice provisions of an accident insurance policy because of an incapacity suffered as a result of the very accident that the insured had contracted and paid to be insured against, the insurance company may not deny coverage on the basis of the late notice so long as the insured gives notice within a reasonable time after the incapacity ends.[2]

---

**2.** The *Roseberry* court's choice of "a reasonable time" as the length of time to allow an incapacitated insured to provide notice after his disability ends is consistent with other Missouri cases construing policy notification requirements. Where policy notice clauses require the insured to notify the insurer of an occurrence "immediately" or "as soon as practicable," Missouri courts have uniformly held that such language will be construed to mean "within a reasonable period of time." *Scott v. Club Exchange Corp.*, 560 S.W.2d 289, 295–96 (Mo.App.1977); *Cockrell v. Farmers Mutual Automobile Ins. Co.*, 427 S.W.2d 303, 308 (Mo.App.1968); *United States v. Conservation Chemical Co.*, 653 F.Supp. 152, 228 (W.D.Mo. 1986).

Although not citing *Roseberry,* this Court applied nearly identical principles in *Greer,* 441 S.W.2d at 31, where the plaintiffs—who were insured under the omnibus clause of an automobile liability policy—failed to give notice to the insurance carrier because the plaintiffs did not know and could not reasonably be expected to know of the existence of the policy or its terms. Although not dealing with a physical incapacity, *Greer* provides the functionally equivalent rule that even when the time limits for providing notice are fixed under an insurance policy, "if the circumstances of the accident are such as to make it impossible to comply with the condition, giving the notice within a reasonable time after it becomes possible has been held sufficient." *Id.* (quoting *McFarland v. United States Mut. Acc. Ass'n,* 124 Mo. 204, 27 S.W. 436, 439 (1894)).

*Greer* also holds that one of the factors to be considered in determining if an insured provided notice within a reasonable period of time is whether the insurance company was prejudiced by the delay. *Greer,* 441 S.W.2d at 32. See also *Cockrell v. Farmers Mutual Automobile Ins. Co.,* 427 S.W.2d 303, 308 (Mo.App.1968). As noted by the court in *Cockrell,* this inclusion of a prejudice factor reflects the historical reluctance of Missouri courts to excuse an insurer from its contractual obligations because of an insured's breach of some policy provision that does not prejudice the insurer. *Cockrell,* 427 S.W.2d at 308–09.

In effect, Missouri courts have consistently placed the burden on insurers to demonstrate that they are prejudiced by receiving late notice of a claim before allowing the companies to avoid coverage under a policy because of the late notice. *Greer,* 441 S.W.2d at 31–33; *Dickhans v. Missouri Property Ins. Placement,* 705 S.W.2d 104, 106–07 (Mo. App.1986); *Pannell v. Missouri Ins. Guaranty Ass'n,* 595 S.W.2d 339, 348 (Mo.App. 1980). Prejudice to the insurer will not be

presumed from the mere fact of an insured's delay in giving notice, *Katz Drug Co. v. Commercial Standard Ins.,* 647 S.W.2d 831, 836 (Mo.App.1983), and the presence or absence of prejudice in this context is an issue of fact to be determined on the particular facts of each case. *Reid v. Connecticut General Life Ins. Co.,* 17 F.3d 1092, 1098 (8th Cir.1994) (citing *Greer,* 441 S.W.2d at 15).

In *Hendrix v. Jones,* 580 S.W.2d 740, 744 (Mo. banc 1979), this Court imposed the burden of proving prejudice on the insurer in the analogous situation of an insured's failure to comply with the cooperation clause of the policy by refusing to attend the trial. In requiring the insurer to prove prejudice, this Court concluded that a presumption in favor of the insurer was undesirable on public policy grounds, since it "could unfairly deprive innocent injured persons of the benefit of a valid judgment and provide the insurer an undeserved windfall." *Id.* *Hendrix* also states that placing the burden of proving prejudice on the insurer is preferable to requiring the insured to prove a lack of prejudice, since the latter involves proof of a negative. *Id.*

The requirement that an insurer prove prejudice before avoiding coverage on the grounds of late notice is a departure from a strict contractual approach to insurance policies. Missouri is not alone in such departure, however, as other jurisdictions have similarly held when (1) the insurance policy is a contract of adhesion and (2) the denial of coverage for failing to comply with a notification requirement amounts to a forfeiture, for the insurer seeks to deny the insured the very thing for which the insured has paid. See generally *Johnson Controls, Inc. v. Bowes,* 381 Mass. 278, 409 N.E.2d 185, 187–88 (1980); *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 195–98 (1977); *State Farm Mutual Automobile Ins. Co. v. Johnson,* 320 A.2d 345, 347 (Del.1974).[3]

3. The requirement that the insurer bear the burden of proving prejudice from late notice is a judicially-created exception to the rule expressed in *Missouri Commercial Inv. v. Employers Mut. Cas.,* 680 S.W.2d 397, 400 (Mo.App.1984), that the insured bears the burden of showing compliance with the requisite policy conditions, includ-

ing any notice provisions, in order to make a submissible case for recovery. *Meyers v. Smith,* 375 S.W.2d 9, 15 (Mo.1964), holds that while it is the general rule that the insured has the burden of proving the facts essential to the insurer's liability, when the insurer seeks to escape coverage because of an alleged breach of a policy

Based upon the preceding review of the existing law in Missouri, the general principles that appear to be controlling in the case at bar are (1) that incapacity will excuse compliance with the notice provisions of an insurance policy if notice is given to the insurer within a reasonable time after recovery from the incapacity and (2) that the insurer, to be entitled to deny coverage for failure to comply with a policy provision, has the burden of proving prejudice. The cases cited for these general principles, however, involve policy provisions other than those requiring notice of a "phantom vehicle" in a hit-and-run accident.[4] When, in recent years, a few Missouri decisions did address the issue of an insured's failure to give notice of a "phantom vehicle" as required by the policy provisions, these general principles were not followed. Although the recited facts in these hit-and-run cases indicate a possible incapacity, nearly all of the plaintiffs proceeded exclusively upon the theory of substantial compliance with the policy notice provisions; only two plaintiffs also claimed to be excused from compliance based upon incapacity.

The first such case, *Girard v. State Farm Mut. Auto. Ins. Co.*, 737 S.W.2d 254 (Mo. App.1987), was decided by the Court of Appeals, Western District. In *Girard*, plaintiff was a passenger in a motor vehicle that was involved in an accident. Eighteen months later, she filed suit against the driver of the automobile for negligence and against State Farm Mutual Automobile Insurance Company under the uninsured motorist provision of its policy. In her petition, plaintiff alleged the existence of a "phantom vehicle." She conceded that such allegation was the first notice that a "phantom vehicle" was involved in the accident. She further admitted that no notice of such "phantom vehicle" was given to any law enforcement agency within twenty-four hours, nor to State Farm within thirty days, as the policy required. Nevertheless, she claimed entitlement to uninsured motorist coverage because she substantially complied with the policy provisions. Plaintiff also asserted that she was of Philippine decent and was ignorant of the policy provisions.[5]

In affirming the trial court's grant of summary judgment to State Farm, the court rejected plaintiff's claim of substantial compliance, finding that the notice requirements were conditions precedent to coverage. *Id.* at 256. The court also found that plaintiff's ignorance of the policy provisions would not relieve her of the responsibility to comply with such requirements, as she had a duty to seek out someone to either read or explain the policy to her. *Id.*

In addressing such issues, the court distinguished the holdings of *Greer*, 441 S.W.2d 15, and *Dixon v. United States Fidelity & Guaranty Co.*, 155 S.W.2d 313 (Mo.App.1941), by finding that the rulings of those cases relied upon a finding that the policy language was sufficiently ambiguous to permit coverage.[6] *Girard*, 737 S.W.2d at 256. A reading of *Greer* and *Dixon* calls into question such a distinction, however, as ambiguity in the policy provisions was not the basis of the courts' rulings.

provision, the burden is on the insurer to prove facts that would allow that provision to relieve it from liability. This is a further expression of Missouri courts' aversion to forfeiture.

4. *Greer*, 441 S.W.2d 15, and *Scott*, 560 S.W.2d 289, deal with notice of an accident that did not involve such factors. *Roseberry*, 121 S.W. 785, involves notice of a workplace injury. *Katz*, 647 S.W.2d 831, concerns notice of the filing of a lawsuit involving a policy that covered errors in the operation of an employee benefit program. *Hendrix*, 580 S.W.2d 740, involves the breach of a policy clause requiring the insured to cooperate with the insurer in his defense at trial. *Dickhans*, 705 S.W.2d 104, concerns a policy requirement to file the proof of loss within sixty days after such proof is requested.

5. It is not clear from the opinion whether Ms. Girard's Philippine lineage was being raised as the defense of excuse by incapacity.

6. In *Dixon*, 155 S.W.2d at 316, the motor vehicle operator against whom a claim for damages was made was unaware, like the plaintiffs in *Greer*, of the existence of the liability policy that covered him. The *Dixon* court held that, if there is a reasonable excuse for an insured's delay in complying with a policy's notice provision, the insurer will not be entitled to avoid liability absent a clear forfeiture provision in the policy. *Id.* The later holding of *Greer*, however, found liability despite an express forfeiture provision. *Greer*, 441 S.W.2d at 31–32.

The *Girard* court further ruled—virtually as a matter of law—that State Farm was prejudiced by late notification of a hit-and-run accident because of the insurer's resulting inability to timely investigate the matter. *Id.* at 257. *Girard* provides only a cursory explanation for its conclusion that an insurer is essentially prejudiced *per se* by late notification. *See id.* In fact, *Girard* cites no Missouri cases on the question of prejudice arising from late notification by an insured. *See id.* at 256–57. As demonstrated in the preceding paragraphs, however, the general rule in Missouri law rejects the notion that prejudice to the insurer will be conclusively or rebuttably presumed as a matter of law. Rather than rely on Missouri law, the *Girard* court cites cases from eight other states that it found persuasive. *Id.* at 256. A review of those cases, however, reveals those jurisdictions primarily applied principles from their state's general insurance law to formulate the state's rule applicable to hit-and-run cases, which is precisely what the *Girard* court failed to do in its own decision. The *Girard* court, like the cases upon which it purportedly relied, should have looked to the existing law of its own jurisdiction.

The issue in the next hit-and-run case, *Billings v. State Farm Mut. Auto. Ins.*, 741 S.W.2d 886, 887 (Mo.App.1987), was whether notice provisions identical to those in the case at bar violated public policy, not whether the insured had substantially complied with the provisions. The rationale of the court in upholding the provisions was that:

> Strong public policy interests are protected through the use of notice provisions. For, the insured public will incur additional and unnecessary costs if insurers are forced to pay stale claims, as to which the insurer has not been accorded the opportunity to conduct an investigation while the facts are still fresh. This consideration is particularly acute in a situation such as the present case, where an unidentified, "hit and run" or "phantom" vehicle is involved.

*Id.* at 888.

The next case was *Friend v. State Farm Mut. Auto. Ins. Co.*, 746 S.W.2d 420 (Mo. App.1988). In *Friend*, the plaintiff was found unconscious in the road next to a bi-cycle she had been riding. She was hospitalized for twenty-five days following the accident, apparently suffering head injuries resulting in a form of amnesia, preventing her from remembering most of the details of the bicycle ride. After the plaintiff was released from the hospital, the "family" was trying to determine how the accident occurred and decided that she must have been struck by a vehicle she remembered seeing on the highway. Although plaintiff's insurance policy had a notice requirement identical to that in the case at bar, she did not ever report the incident to a law enforcement agency, and she did not notify the insurance company of the "hit-and-run" until almost five months after the incident.

In *Friend*, the court cited *Girard* and *Billings* as authority for its holding that "there is no logical reason in this case to hold that the notice requirements . . . of the policy in question are not conclusive." *Id.* at 423. The court relied upon *Girard* for its holding that whether plaintiff materially breached the policy notice provisions was not an issue of material fact and therefore the issue could be decided summarily. *Id.* at 422. Both *Girard* and *Billings* were relied upon in finding there was no issue of material fact as to whether the insurer was prejudiced by the delay in giving notice. *Id. Billings* is not authority for such a proposition, however, as the case does not address the issue of whether the failure to give notice precludes coverage. Rather, the *Billings* court determined that the policy provisions requiring notice within twenty-four hours to the police and thirty days to the insurer were not against public policy. *Billings*, 741 S.W.2d at 888.

In *Friend*, 746 S.W.2d at 421–22, the plaintiff argued on appeal that her failure to meet the notice requirement did not constitute a material breach of the insurance contract; the excuse of incapacity was not an issue in that case. This distinction was noted in a concurring opinion, which stated:

> Some delay in notifying law enforcement officers and the insurance company is understandable and excusable. The public policy interests which are served by enforcing the notice provisions of the policy are outweighed by a countervailing public

policy interest in protecting insureds who are physically or mentally incapable of communicating such notice to their insurer.

*Id.* at 424. However, the opinion concurred in the result because, while the plaintiff's disability might excuse a failure to provide notice for a period of up to thirty days after her discharge from the hospital, it would not excuse an unexplained failure to provide notice for nearly five months after the accident. *Id.*

The Court of Appeals, Western District, in *Brown*, 805 S.W.2d at 279, expanded the rulings of *Girard* and *Friend* to preclude recovery by an insured who allegedly was prevented from compliance with the policy provisions by injuries suffered in the covered accident. The insured in *Brown* suffered injuries in a hit-and-run accident, which apparently made him lose any memory of the "phantom vehicle" that ran him off the highway. His counsel was only made aware of the existence of such a vehicle by a witness, who disclosed this information more than five months after the deadline for reporting a phantom vehicle to the insurance company had expired. The insured's first notice to the insurance company of the "phantom vehicle" occurred after an additional five months had passed. The insurance company denied uninsured motorist coverage, and the trial court granted summary judgment to the insurance company because the insured had failed to report the accident within the time constraints of the policy.

*Brown* held that *Friend* stands for the general proposition that a disability, such as amnesia, "did not warrant the avoidance of the policy provisions." *Id.* However, as noted in the concurrence to the *Friend* decision, the excuse of incapacity was not before the *Friend* court. *See Friend*, 746 S.W.2d at 424. Nevertheless, after noting that "summary judgment is appropriate in the first instance only when no theory within the scope of the pleadings, depositions, admissions and affidavits filed would permit recovery and the moving party is entitled to judgment as a matter of law," the court found *Friend* controlling and affirmed the grant of summary judgment. *Brown*, 805 S.W.2d at

279 (quoting *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984)).

Thereafter, the Court of Appeals, Eastern District, held that an insured would not be excused from having to comply with the notice provisions pertaining to a phantom vehicle in a hit-and-run accident absent a showing that the insurer was not prejudiced by the non-compliance. *Taylor v. Bi–State Development Agency*, 845 S.W.2d 588, 589 (Mo. App.1992). Although the *Taylor* court cites *Girard* for this proposition, *id.*, as explained above, *Girard* does not place the burden of proving lack of prejudice on the insurer but, instead, appears to hold that failure to comply with the hit-and-run notice provisions is *per se* prejudicial. *Girard*, 737 S.W.2d at 257.

In summary, *Girard* and its progeny have established law in cases involving insurance policy notice requirements in hit-and-run or phantom vehicle situations that is in contravention of this Court's precedent governing the failure of an insured to comply with policy provisions because of incapacity or governing substantial compliance. Although *Girard* made a cursory attempt to distinguish the hit-and-run scenario from general insurance principles, such distinction is fallacious. The cases relying upon *Girard* have further deviated from established precedent, with no recognition of such precedent or attempt to justify such departure.

That is not to say that *Girard* and its progeny arrived at an incorrect result. "Ordinarily, the question as to whether notice or proof was given or made within a reasonable time would be for the jury, but where all reasonable persons would conclude that notice or proof was not given or made within that time, under all of the circumstances, then it becomes a question of law for the court." *Hayes v. Equitable Life Assur. Soc.*, 235 Mo.App. 1261, 150 S.W.2d 1113, 1118 (1941). Under the facts of the hit-and-run cases previously discussed, this Court cannot say that it was error to hold in any or every case that the insured waited so long, and without excuse, to provide notice of a phantom driver that reasonable minds could not differ on the question of prejudice to the insurer, and therefore summary disposition

of the issue was warranted. But, in *Girard* and *Brown*, no effort was made to limit those holdings to the facts of the case. Instead, general statements of law were made or adopted that an insured's failure to comply with the "phantom vehicle" or "hit-and-run" notice provisions prejudices the insurance company and conclusively precludes recovery under the uninsured motorist coverage.

Such a summary disposition of the issue of prejudice is not warranted to the case at bar, and those cases do not provide a sound basis for taking the issue of prejudice away from the trier of fact under the facts in this case. On the contrary, *Girard* and its progeny constitute a departure from the more general trend of Missouri cases which, as discussed above, hold that no presumption of prejudice exists and that the issue of prejudice is a question of fact to be determined by the trier of fact. *Greer*, in fact, offers an example of how an insurer can offer testimony in support of the proposition that an insurer was prejudiced by an insured's late notice. *Greer*, 441 S.W.2d at 32–33.

In his first point on appeal, Tresner contends that he was physically incapable of providing notice during his hospitalization after the accident, and that such incapacity should excuse his failure to comply with the notice provisions of the policy, so long as such notice was furnished within a reasonable period of time thereafter. Tresner argues that there are genuine issues of material fact to be resolved pertaining to his incapacity and whether State Farm was prejudiced by the delay and, therefore, the trial court erred by granting summary judgment in favor of State Farm.

■ Recognizing the need to harmonize the general rules and trends in Missouri insurance law with the specific circumstances of a hit-and-run accident involving a phantom vehicle, this Court now adopts the following analysis to apply in the case at bar: When an insured is unable to comply with the notice provisions of an insurance policy because of an incapacity suffered as a result of the very contingency insured against, the insurance company may not deny coverage on the basis of the late notice if the insured can successfully invoke the *excuse* of incapacity. To do

so, the insured must show that the contingency left him incapacitated to the extent that it was not possible for him to provide timely notice. If the insured can establish that he was sufficiently incapacitated, the question then becomes whether he provided notice within a reasonable time after the end of the incapacity. One factor to be considered in making the overall determination of whether notice was provided within a reasonable time after the end of the incapacity is the question of prejudice to the insurer. The insurer bears the burden of showing prejudice from the delay in giving notice; prejudice will not be presumed, and the existence of prejudice is an issue of fact to be determined by the trier of fact.

■ Applying this analysis to the case at bar, this Court concludes that the trial court erred in granting summary judgment to State Farm because there are genuine issues of material fact that must be resolved by the trier of fact. These issues of material fact include the questions of (1) whether, after the accident, Tresner was incapacitated to the extent that it was not possible for him to provide timely notice and (2) whether Tresner provided such notice within a reasonable period of time after the end of the incapacity, considering any prejudice that might have resulted from Tresner's delay in providing notice.

In his second point on appeal, Tresner claims that he is entitled to coverage because he was in substantial compliance with the policy's notice provisions, and because State Farm was not prejudiced by his delay in providing notice. Tresner argues that the questions of substantial compliance and prejudice involved genuine issues of material fact, and therefore the trial court erred by granting summary judgment in favor of State Farm.

■ Substantial compliance with a policy's notice requirement is sufficient, and a failure to comply in some immaterial respect does not justify the avoidance of liability on the part of the insurer. *Id.* at 30. In determining whether or not an insured was in substantial compliance with a policy's notice provision, the trier of fact must consider whether the insurance company was prejudiced by the delay. *Pannell*, 595 S.W.2d at

348–52. Furthermore, the burden of proving such prejudice is on the insurer, *Dickhans*, 705 S.W.2d at 106–07; *Pannell*, 595 S.W.2d at 348; *Hendrix*, 580 S.W.2d at 744; *Greer*, 441 S.W.2d at 30–33, and the presence or absence of prejudice in this context is an issue of fact to be determined on the particular facts of each case. *Reid*, 17 F.3d at 1098. As explained in the preceding discussion, *Girard*, *Friend*, *Brown*, and *Taylor*—which also rely on a substantial compliance analysis—do not provide a sound basis for taking the issue of prejudice away from the trier of fact under the facts in this case.

As described above, the analysis for the excuse of incapacity and the analysis for the doctrine of substantial compliance might appear to be identical, as both involved the question of prejudice to the insurer. However, there is an important difference between the two. In the case of incapacity, the insured's initial failure to provide timely notice is not considered to be his fault so long as that failure was because of a disability that rendered timely notice impossible. In such a case, if the insurer meets its burden and proves that it was prejudiced by the delay in notice, then that prejudice becomes a factor in making an overall determination of whether the insured provided notice within a reasonable time after the end of his incapacity. In the case of a substantial compliance analysis, however, if the insurer can prove to the trier of fact that it was prejudiced by the insured's late notice, then the analysis ends and the insurer is entitled to a judgment in its favor.[7]

Applying these principles to the case at bar, this Court concludes that Tresner's second point on appeal also merits a reversal of the judgment entered by the trial court. In determining whether Tresner substantially complied with the policy's notice provisions, the question of whether State Farm was prejudiced by Tresner's delay in providing notice is an issue of material fact to be determined by the trier of fact, and thus is inappropriate for determination on a motion for summary judgment.

Accordingly, the trial court's judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.

---

7. MAI 32.24 provides that, if the insured violates a policy condition and the defendant insurance company is thereby prejudiced, then the verdict must be for the defendant. For this reason, MAI 32.24 is applicable in a case involving a substantial compliance analysis, but not applicable in a case involving the excuse of incapacity. This limited application is consistent with the Committee Comment to the instruction, which states that the instruction should not be given unless there is evidence of a "material breach" of a policy condition.

The *Pannell* court suggested that an additional rationale for placing the burden of prejudice from late notice on the insurer is that such a rule is consistent with MAI 32.24, which appears to allocate the burden in such a manner as an affirmative defense. *Pannell*, 595 S.W.2d at 348–49, n. 5.