Charles K. DODSON, Appellant,

v.

**STATE FARM GENERAL INSURANCE CO., Respondent.**

**No. WD 54089.**

Missouri Court of Appeals, Western District.

April 28, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied June.2, 1998.

Application for Transfer Denied Aug. 25, 1998.

Roy W. Brown, Kearney, for appellant.

Michael E. McCausland, Kansas City, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

RIEDERER, Judge.

Charles K. Dodson appeals from a grant of summary judgment in favor of Respondent. We affirm.

## Facts

The facts from the record viewed in the light most favorable to the Appellant are as follows. On or about July 3, 1985, Appellant was involved in a rear-end collision while in Memphis, Tennessee. Appellant was a passenger in a 1980 Ford Truck driven by Gene Davis, an employee of Moore & Sons. The truck was owned by Moore & Sons. The truck was rear-ended by a 1970 Chevrolet, driven by Otis Jones. After the accident, Appellant was taken to Methodist Southern Hospital in Memphis, where he was x-rayed, given a sedative and sent home. On the day of the accident, Appellant was a resident of Plattsburg, Missouri.

After the accident, Appellant went to the office of his insurance agent, Bo Hoskins, who was an agent for Respondent. Hoskins was not in his office, so Appellant told an employee of Hoskins that he had been involved in an automobile accident and wanted to find out if his policy included uninsured motorist coverage. The employee told Appellant that everybody in Missouri had uninsured motorist coverage automatically. Appellant told the employee that his lawyer would be contacting her. However, neither Appellant nor Appellant's attorney contacted anyone in the agent's office to submit a claim. On June 7, 1995, nine years and eleven months after the collision, Respondent received written notice of Appellant's uninsured motorist claim. On June 30,1995, Appellant filed a petition for damages against Respondent. On August 21, 1996, Respondent filed a motion for summary judgment, alleging that the written notice received from Appellant on June 7, 1995 was untimely. On October 30, 1996, a hearing was held. After the hearing, Respondent's motion for summary judgment was sustained, although the trial court did not articulate the reasons why. On December 5, 1996, Appellant filed a motion to set aside judgment and for new trial. The trial court denied Appellant's motion on March 5, 1997. This appeal ensued.

## Standard of Review

■ Our review of summary judgments is essentially de novo. *ITT Commercial Finance v. Mid–Am. Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will review the record in the light most favorable to the party against whom judgment was entered, and confer upon the non-movant the benefit of all reasonable inferences from the record. *Id.* "The propriety of summary judgment is purely an issue of law." *Id.* To be entitled to judgment as a matter of law, a movant must prove that no genuine issues of material fact exist. *Id.* at 380. Where a movant is a "defending party," the movant "may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts; (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements; or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *Id.* at 381. Respondent's claim that lack of timely notice was a breach of the insurance contract is a properly pleaded affirmative defense. *Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 821 (Mo. banc 1997).

## I. Insurer's Duty To Advise Insured Regarding Insured's Duty To Provide Insurer Notice Of Loss

■ Appellant contends in his first point that the trial court erred in sustaining Respondent's motion for summary judgment because Appellant's verbal notice to an employee in the office of his agent created a legal duty upon his agent to advise him of all of the policy provisions involving notice of an accident or loss and that failure to notify Appellant of these policy provisions bars Respondent from raising any affirmative defense for noncompliance with these provisions.

The insurance policy underlying this dispute contains the following provision: "Reporting A Claim—Insured's Duties"—The insured must give us or one of our agents written notice of the accident or loss as soon as reasonably possible. . . .

In this case, Appellant does not dispute that he did not give *written* notice of his

accident until June 7, 1995. Appellant also does not contend that his conversation with a State Farm employee constituted substantial compliance with the written notice provision. He merely contends that the exchange between himself and the employee at the insurance agent's office at an unspecified time after the accident created a duty on the part of the insurer to notify the insured about all of the policy provisions involving notice of an accident or loss. Appellant cites no authority for this proposition. In addition, public policy does not seem to help Appellant. "Conditions of an automobile liability policy are valid and enforceable which require that written notice be given to the liability insurance carrier as soon as practicable when an accident occurs and that suit papers be forwarded immediately." *Greer v. Zurich Ins. Co.*, 441 S.W.2d 15, 30 (Mo.1969). In *Billings v. State Farm Mut. Auto. Ins.*, 741 S.W.2d 886, 888 (Mo.App.1987) the court noted: "Strong public policy interests are protected through the use of notice provisions. For, the insured public will incur additional and unnecessary costs if insurers are forced to pay stale claims, as to which the insurer has not been accorded the opportunity to conduct an investigation while the facts are still fresh."

In the face of this public policy and in view of the lack of any precedent for his claim, Appellant argues that "the public policy of Missouri, gleaned from various cases, regulations and statutes, supports Appellant's contention that an insured's verbal notice of an accident or loss creates a legal duty upon the insurer, the insurance agent, to disclose all policies and conditions involving written notice as a condition precedent to the insurer raising an affirmative defense of improper notice." Appellant cites *Winger v. General American Life Insurance Co.*, 345 S.W.2d 170 (Mo.1961), for the proposition that an insurance company has a legal duty to investigate any health condition, which would void a policy or bar coverage, prior to delivery of the policy or collection of premiums. *Winger* involved misrepresentation and waiver of a sound health requirement. This case is not applicable. Appellant cites *Miles v.*

*Iowa National Mutual Insurance Co.*, 690 S.W.2d 138 (Mo.App.1984), for its recognition of a legal duty of an insurance company to notify an insured of any defects and insufficiencies in proofs of loss. *Miles* involved a fire insurance policy. The insurer rejected the insured's proof of loss because it was insufficient. It did not accurately indicate the interest of the parties in the items, it did not contain adequate records of value for lost items and it did not contain a legal signature. *Miles* is not applicable to this case.

Appellant also cites § 375.445.1 [1] and § 375.1007. Appellant claims § 375.445.1 imposes a good faith obligation to insureds. Section 375.445.1 concerns fraudulent business practices, and the necessity of the director after investigation to serve upon such company a statement of the charges and notice of a hearing on the matter. However, Appellant does not allege any fraudulent business practices. Appellant also cites § 375.1007, which deals with improper claim practices. Appellant does not claim any improper claim practices.

Finally, Appellant cites 4 CSR 190–10.060(3)(A) and (B). Subsection (A) concerns disclosure requirements to a claimant *after* a claim is presented and subsection (B) concerns concealment of benefits, coverages or provisions in insurance policies. These regulations involve unfair claim settlement practices, which do not pertain to Appellant's claim.

Appellant contends that the authorities cited above demonstrate that public policy in Missouri creates a legal duty upon the insurer and its agents to advise an insured about policy provisions which could result in avoidance or forfeiture. This is not an accurate depiction of Missouri law regarding automobile insurance.

The insurance policy in this case is unequivocal in its terms and prescribes the 'duties' necessary to the presentment of a claim under the uninsured motorist coverage section of the policy. *See Friend v. State Farm Mut. Auto. Ins. Co.*, 746 S.W.2d 420, 422 (Mo.App.1988). In *Girard v. State Farm Mut. Auto. Ins. Co.*, 737 S.W.2d 254, 256

---

**1.** All statutory references are to RSMo 1994, unless otherwise indicated.

(Mo.App.1987), Girard never advised any law enforcement agency of a "phantom vehicle" within 24 hours of the accident, required by a provision in her policy. Girard argued that she had substantially complied with the provision. The court was not persuaded that Girard's Phillipine descent was a valid reason why she did not comply with the policy provision. The court said, "She had the duty to seek out someone who could have read or explained the policy to her. Her ignorance or alleged ignorance did not relieve her of this responsibility." *Id.* The court went on to say that Girard's failure to comply with the provision was a material breach of the insurance policy and that she failed to show substantial compliance. In our case, Appellant only asked Respondent's employee whether he was covered by uninsured motorist coverage. Appellant went on to tell the employee that his lawyer would be contacting Mr. Hoskins, Appellant's agent. This appears to place the burden on Appellant, not Respondent. Appellant claims that he did not have a copy of his policy, but he never asked the employee for any further information, never asked for a copy of his policy, and never asked to make an appointment with his agent.

Appellant's argument that verbal notice to an employee of Respondent created a legal duty upon Respondent and its agents to advise Appellant about policy provisions which could result in avoidance or forfeiture is incorrect as a matter of law. Point I is denied.

## Point II—Prejudice to Insurance Carrier Because of Late Notice

■ Appellant contends in his second point that the trial court erred in sustaining Respondent's motion for summary judgment because Respondent failed to prove that it was actually prejudiced by Appellant's late written notice of his uninsured motorist claim.

When an insured is required to give notice of a claim to the insurance carrier "as soon as reasonably possible," and when the insured delays the giving of the notice, then the insurance carrier may assert the delay as an affirmative defense, claiming that the delay is a material breach of the insurance contract. *Weaver,* 936 S.W.2d at 821 (Mo. banc 1997). If Respondent establishes all the elements of this affirmative defense, then it is entitled to judgment as a matter of law. *ITT,* 854 S.W.2d at 381. Therefore, the question is whether Respondent, as the moving party, has established each element of its affirmative defense. *Id.* Respondent cannot succeed in this defense merely by showing that notice was not timely, Respondent must show that it was prejudiced by the delay in giving notice. *Weaver,* 936 S.W.2d at 821. If the insurer can prove to the trier of fact that it was prejudiced by the insured's late notice, then the analysis ends and the insurer is entitled to a judgment in its favor. *Tresner v. State Farm Ins. Co.,* 913 S.W.2d 7, 16 (Mo. banc 1995).

"Missouri courts have consistently placed the burden on insurers to demonstrate that they are prejudiced by receiving late notice of a claim." *Id.* at 11. The prejudice requirement stems from the reluctance of Missouri courts to excuse an insurer from its contractual obligations because of an insured's breach of a policy provision that does not prejudice the insured. *Id.* Requiring the insurer to prove prejudice safeguards insureds from denial of coverage if they have not complied with a notice provision, unless there is demonstrable harm emanating from the insured's late notice. "[T]he presence or absence of prejudice is an issue of fact to be determined on the particular facts of each case." *Id.* at 16.

Respondent insurance company argues that it was prejudiced in a number of ways. First, it claims that the delay in giving notice has prevented it from gathering evidence, including finding witnesses and determining whether there is additional uninsured motorist coverage that would apply to Appellant's claim. Second, it claims the late notice prejudiced Respondent's right to seek reimbursement from the allegedly uninsured motorist, because the statute of limitations on that claim had already run before Respondent was notified of Appellant's claim. Third, Respondent claims that the delay means that it may not now be able to prove that the alleged uninsured motorist was not in fact

uninsured, because of certain statutory presumptions.

In its first claim of prejudice, Respondent argues that the delay in giving notice has prevented it from gathering evidence, including finding witnesses and recovering records of other uninsured motorist coverage that would apply to Appellant's claim. Respondent submitted an affidavit from J. Kyle Hickam, a claims superintendent for Respondent, and the affidavit and testimony of Neressa Wilkins. Wilkins investigated the accident for Respondent. She obtained the police report of the accident and attempted to locate the people whose names were on the report. Initially, Wilkins was unable to locate any of the individuals on the report. After an unsuccessful attempt using directory assistance, she utilized Professional Reporting Services. Through this service, Wilkins located Mary Wright, the owner of the uninsured vehicle driven by Otis Jones, her son. With the assistance of Ms. Wright, Wilkins also spoke with Otis Jones. He refused to give a recorded statement and denied having been involved in the accident. Wilkins was unable to contact Gene Davis, the driver of the car in which Appellant was a passenger. Mr. Davis worked for Moore & Sons at the time of the accident. However, the business had burned down and may have filed bankruptcy. Wilkins further testified that although the reporting officer still worked for that police department, she was unable to speak with him. Since Wilkins could not locate Gene Davis, and since Moore & Sons had gone out of business, she was unable to determine whether there was any additional uninsured motorist coverage. However, she did discover that at the time of the accident, Ms. Wright's vehicle was insured by B.L. Blake Insurance Co. When Wilkins contacted the insurance company, she was told that there would not be any record of the coverage since they only keep their records for five years.

Second, Respondent claims that the late notice prejudiced its right to seek reimbursement from the allegedly uninsured motorist because the statute of limitations on that claim had already run before Respondent was notified of Appellant's claim. Under Tennessee law, personal tort actions must be filed within one year after the cause of action accrued. Tenn.Code Ann. § 28–3–104. If Missouri's statute of limitations applied on this issue, Respondent would also be unable to seek reimbursement from the uninsured motorist, since § 516.120 requires such an action to be brought within five years after the cause of action accrues. "The fact the statute of limitations has run on a claim against a tortfeasor, thereby preventing an insurer from filing a subrogation action, does not preclude an insured from pursuing a timely-filed uninsured motorist claim." *Schreiner v. Omaha Indemnity Co.*, 854 S.W.2d 542, 545 (Mo.App.1993). The court in *Edwards v. State Farm Ins. Co.*, 574 S.W.2d 505, 508 (Mo.App.1978), addressed the same argument of Respondent by stating:

> It is true an insurer ... is put to some disadvantage when it can no longer pursue subrogation against an uninsured motorist. However, such hardship does not go to the nature of the cause of action and consequently does not determine what statute of limitations should apply. The application of any statute of limitations generally creates a hardship but it is a hardship because someone delayed doing what he might have done ... This argument overrates the importance of subrogation because an insured[2] motorist tends to be financially irresponsible and a subrogation right against such a person is not worth very much.

We find that Respondent was not prejudiced by the running of the statute of limitations.

Third, Respondent claims that the delay in notice means that it may not be able to prove that the alleged uninsured motorist was not in fact uninsured, because of certain statutory presumptions. Although Appellant has the burden to prove that Jones was an uninsured motorist, under Tenn.Code Ann. § 56–7–1201(g): "[f]ailure of the motorist from whom the insured is legally entitled to recover damages to file the appropriate forms ... within ninety days of the accident date, shall create a rebuttable presumption

---

**2.** The opinion clearly meant to read "uninsured" motorist, rather than insured motorist.

that such motorist was uninsured at the time of such accident." In Missouri, § 379.203.5, a similar uninsured motorist provision provides that:

> In any action on a policy of automobile liability insurance coverage providing for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles, the fact that the owner or operator of such uninsured vehicle whether known or unknown failed to file the report required ... shall be prima facie evidence of uninsured status.

It is undisputed that the allegedly uninsured motorist did not file the report required by either or both of these statutes. However, this does not establish prejudice. First, the Tennessee statute requires the filing to be made within ninety days of the accident. Therefore, the presumption comes into play long before any delay would be so large as to be unreasonable. Thus, the presence of the offending presumption cannot be blamed on the policy holder. The Missouri provision applies only to accidents that happen in Missouri. Section 303.040. Even if it applied, it would provide an even shorter time span than the Tennessee law, requiring a report within thirty days of the accident. Section 379.203.5; § 303.040. The fact that it sprang into existence cannot be blamed on the policy holder. Even if the statutory presumption were prejudicial, it cannot be blamed on the policy holder.

Appellant relies on *Weaver*, 936 S.W.2d at 818, in its claim that Respondent failed to show actual prejudice caused by the late notice of the claim. In *Weaver*, the Missouri Supreme Court held that the insurer must establish prejudice to forfeit the coverage to which the insured would otherwise be entitled. *Id.* at 821. The court concluded that the insurer in that case had failed to prove prejudice, because the affidavit the insurer had filed in order to prove prejudice was simply, "too conclusory and speculative to establish prejudice in fact." *Id.* at 822.

Our case is not analogous to *Weaver*. The affidavits regarding prejudice in our case were factual and were not merely "conclusory and speculative." *Id.* Respondent submitted an affidavit and testimony of Wilkins, detailed *supra*, which recounted her attempts to recover evidence.

Further, the delay in reporting to the insurance company in *Weaver* was one day short of one year. By contrast, the delay in our case was nine years and eleven months. In fact, in all the cases cited by both parties and revealed by our research, the longest delay in reporting was two years.

## Conclusion

Although Respondent was able to contact most or all of the essential witnesses, including the owner and driver of the allegedly uninsured vehicle, Respondent was unable to locate pertinent records: the insurance company for the uninsured vehicle destroyed its records from the time of the accident and the records of the owner of the vehicle in which Appellant was a passenger were also destroyed, since the company went out of business.

These facts alone show very little prejudice to Respondent. However, when combined with the fact that Appellant told the insurance agency's employee that his lawyer would contact the insurance agent and the fact that Appellant waited nine years and eleven months—three weeks short of the statute of limitations of ten years—before giving written notice of the claim, prejudice was established. Respondent has proven its affirmative defense of breach of the insurance contract by failure to give notice as soon as reasonably possible. Point II is denied.

Judgment of the trial court is affirmed.

LAURA DENVIR STITH, P.J., and HANNA, J., concur.